RUSSELL F. LEWIS, RESPONDENT, v. MAUD THOMPSON, EXECUTRIX OF THE ESTATE OF MILTON THOMPSON, DECEASED, APPELLANT.—96 S. W. (2d) 938.

Kansas City Court of Appeals. June 15, 1936.

*C. W. Prince, James N. Beery,* and *Ben R. Estill* for respondent.

*Ryland, Stinson, Mag & Thompson* and *Alfred M. Seddon* for appellant.

REYNOLDS, J.—On April 2, 1932, the plaintiff, Russell F. Lewis, filed and exhibited for allowance in the probate court of Jackson County, Missouri, at Independence, his verified demand in the sum of $5000 against the estate of Milton Thompson, deceased, (in course of administration in said court) for services claimed to have been rendered by plaintiff in the early months of 1927 up to and including April 2, 1927, to the said Thompson in the sale of

two lumber yards operated by the Thompson-Parker Lumber Company, unincorporated, in which company the deceased Thompson was a partner and practically the owner, located at Lees Summit and Raytown, Missouri, and for services alleged to have been rendered in procuring buyers for the real estate on which said lumber yards were located.

From an allowance of the demand by the probate court, an appeal was taken by Maud Thompson, the executrix of the estate of Milton Thompson, deceased, in charge of the administration thereof, to the Circuit Court of Jackson County, Missouri, at Independence.

In the circuit court, the defendant (the administratrix) filed a written answer to such demand, in which she denied that the claimant, Russell F. Lewis, had any lawful or just claim or demand against the estate of the deceased and in which she denied that such estate was indebted to the claimant in any amount. The answer also pleaded in bar of said demand the five year general statute of limitation of Missouri and the special one-year statute of limitation applicable to the administration of estates of deceased persons.

The cause was tried de novo in the circuit court before a jury, resulting in a verdict and a judgment rendered thereon against the defendant executrix and in favor of the plaintiff in the sum of $3400 at the December term, 1934.

From such judgment so rendered against her, the defendant executrix, after unsuccessful motions for a new trial and in arrest of judgment, prosecutes this appeal.

The evidence tends to show that the Thompson-Parker Lumber Company was a partnership composed of Milton Thompson and H. L. Parker and his wife, Laura M. Parker; that, in the early part of the year 1927, it was the owner of two lumber yards, one at Lees Summit and the other at Raytown, Missouri; that, in March, 1927, the plaintiff called on one Mr. W. B. Jones, an officer of the J. C. Jones Lumber Company, at Lees Summit, and informed him that the said yards of the Thompson-Parker Lumber Company were for sale and sought to ascertain whether he would be interested in buying them; that Mr. Jones advised him that he was not interested; that, shortly afterwards, the plaintiff again called on Mr. Jones; that Mr. Jones, in the meantime, had talked with Mr. B. T. Moore of the Logan-Moore Lumber Company of Kansas City, Missouri, and advised him that the said yards of the Thompson-Parker Lumber Company were for sale and, in the buying of which yards, Moore appeared to show some interest; that, on this second trip, the plaintiff submitted to Mr. Jones a price for the yards for consideration by Mr. Moore, which price was rejected by Mr. Moore; that, thereafter, plaintiff again called on Mr. Jones and submitted another and lower

price, which resulted in a deal for the sale of the yards to the J. C. Jones Lumber Company being closed with the J. C. Jones Lumber Company by the plaintiff; that a written agreement of date March 23, 1927, was thereupon executed by W. B. Jones for the J. C. Jones Lumber Company and by H. L. Parker for the Thompson-Parker Lumber Company, by the terms of which the Thompson-Parker Lumber Company agreed to sell and the J. C. Jones Lumber Company agreed to buy the lumber yards, including the real estate and improvements, furniture and fixtures, delivery trucks and equipment, together with the merchandise of lumber on hand in said yards; and that the sale price of the real estate was agreed upon and incorporated in the written agreement at the sum of $37,000.

The evidence further tends to show the following: By the terms of said written agreement, the seller and the buyer also agreed on certain printed price lists which established the wholesale price for various grades and kinds of lumber, from which price lists the sale price of the lumber merchandise stock (based upon an inventory or invoice of the lumber on hand in the two yards) was to be computed. On March 24, 1927, the J. C. Jones Lumber Company assigned the written agreement of purchase to the Logan-Moore Lumber Company, which thereupon became the buyer of the lumber yards in the place and stead of the J. C. Jones Lumber Company. The inventory of the lumber merchandise at the Lees Summit lumber yard was completed on March 26, 1927; and, on said date, the Logan-Moore Lumber Company took full and complete possession of that yard and began to make sales of lumber on its own account. The inventory of the lumber merchandise at the Raytown yard was completed on April 2, 1927, although possession of such yard was transferred on March 30, 1927. The Thompson-Parker Lumber Company had nothing to do with either of the yards after March 30, 1927. In pursuance of the written agreement, the real estate was conveyed to the Logan-Moore Lumber Company, by the sellers (Milton Thompson, H. L. Parker, and Laura M. Parker) by warranty deed on March 24, 1927. On April 2, 1927, one Mr. Rudolph Jackson, secretary of the Logan-Moore Lumber Company, and Mr. H. L. Parker of the Thompson-Parker Lumber Company computed the sale price of the lumber merchandise from the inventories as made at the two yards using the agreed price lists as the basis of the computation and ascertained the total amount of the consideration to be paid to the seller, Thompson-Parker Lumber Company, by the buyer, Logan-Moore Lumber Company, which consideration amounted to $92,846.54 and represented the sales price of the real estate, buildings, fixtures, delivery equipment, and the stock of merchandise comprising the yards at Lees Summit and Raytown. Mr. Jackson thereupon wrote out and delivered to Mr. Parker the check of the Logan-Moore Lumber Company dated April 2, 1927,

payable to the order of the Thompson-Parker Lumber Company for the sum of $92,846.54, in payment of the total consideration of the sale of the lumber yards in question. The deal for the sale of the two lumber yards with the J. C. Jones Lumber Company appears to have been closed by the plaintiff. His efforts were the procuring cause. During the negotiations for the sale of the lumber yards, the plaintiff and Mr. Milton Thompson drove Mr. W. B. Jones from Lees Summit to Raytown to look over the Raytown yard, on which trip there was some discussion and conversation with respect to the proposed sale of the yards. During the conversation between himself and Mr. W. B. Jones with reference to the sale and purchase of said yards, plaintiff, on one or two occasions, called Mr. Thompson over the telephone and discussed with him the matter of the sale of the yards. At one time, when Mr. Jones was at the home of plaintiff, plaintiff called Mr. Thompson on the telephone with respect to the sale price of the yards; and Mr. Thompson submitted a certain price or agreed to a certain price, at which Mr. Jones agreed to buy. All of the activities on the part of plaintiff in the sale of the yards in question were prior to March 24, 1927.

There is evidence tending to show that Mr. Milton Thompson was the owner of a number of farms and other properties and that there was a working arrangement between him and plaintiff under which plaintiff was engaged in making sales and trades of properties belonging to Mr. Thompson and had been actively so engaged since January 1, 1927.

There is evidence tending to show that plaintiff was engaged the greater part of the month of March, 1927, in an endeavor to make a sale of the Thompson-Parker Lumber Company yards and that, during such time, both Mr. Thompson and Mr. W. B. Jones of the J. C. Jones Lumber Company were frequently at the home of the plaintiff.

It seems to be agreed by both parties in their briefs that the main issues joined by the pleadings and tried in the circuit court are whether the demand and cause of action of the plaintiff are barred by the five-year statute of limitation and whether the plaintiff was employed by the Thompson-Parker Lumber Company and the deceased Milton Thompson as a partner therein to procure a buyer for the lumber yards in question.

The claim or demand of the plaintiff is upon *quantum meruit* for the reasonable value of the services alleged to have been rendered by the plaintiff. No written contract of employment of the plaintiff is shown in evidence upon the trial, nor is there any evidence of any compensation in any fixed or other sum that was agreed to be paid by the deceased, Milton Thompson, to the plaintiff for services performed by him in the making of such sale. There is no evidence of any agreement between plaintiff and Mr. Thompson with refer-

ence to the compensation, if any, to be paid. His claim for compensation rests entirely on the services performed and the reasonable value thereof.

There is evidence tending to show that the reasonable value of services of the character performed by plaintiff in the communities in which the lumber yards in question were situated ranged from a commission of two and one-half per cent to one of five per cent on the sale price of the said yards. There is other evidence tending to show that the usual and ordinary compensation for finding a buyer for a yard was $250 a yard or $500 a yard where the broker or agent also did the invoice work.

At the close of all of the evidence, the defendant requested a peremptory instruction in the nature of a demurrer to the evidence, which instruction the court refused to give. The defendant likewise requested instructions to the effect that, if the jury should find and believe from the evidence that the seller and the buyer entered into an agreement for the sale of the lumber yards during the month of March, 1927, then the claim of plaintiff is barred by the statute of limitations. The court likewise refused such instructions.

### OPINION.

The defendant complains on this appeal of the action of the trial court in refusing her peremptory instruction in the nature of a demurrer at the close of all of the evidence, basing such complaint on the contentions: (1) Plaintiff's cause of action is barred by the five-year statute of limitation. (2) The evidence is wholly insufficient to make a submissible case on the issue of plaintiff's employment in the sale of the Thompson-Parker Lumber Company yards. Defendant likewise complains of the action of the court in refusing the instructions requested to the effect that, if the jury found the sale of the yards to have been made during the month of March, 1927, then plaintiff's demand is barred by the five-year statute of limitation. Defendant also complains of the admission of incompetent. irrelevant, and immaterial testimony on the trial regarding plaintiff's activities in the sale of other properties of Mr. Thompson which, defendant contends, had no relation to the demand sued on or any effect on the cause.

1. We will first dispose of defendant's contention that the evidence is wholly insufficient to make a submissible case for the plaintiff on the issue of his employment in the sale of the Thompson-Parker Lumber Company yards.

This action is one by the plaintiff upon *quantum meruit* for the reasonable value of his services in finding a purchaser for and effecting a sale of the two lumber yards for the Thompson-Parker Lumber Company. There is no evidence of any express contract of employment by the Thompson-Parker Lumber Company or the deceased of the plaintiff for the making of such sale or for the find-

ing of the purchaser for said properties, but the plaintiff's case rests upon an implied contract of employment for his services. He seeks to recover compensation for his services upon a percentage or commission basis laid upon the total sales price of said properties.

That there must have been a contract of employment either express or implied or a subsequent ratification of plaintiff's services by the Thompson-Parker Lumber Company or the deceased can not be doubted. All of the authorities are to such effect. [Delahunt v. Thuener, 317 Mo. 465, 296 S. W. 86; Windsor v. International Life Insurance Co., 325 Mo. 772, 29 S. W. (2d) 1112.]

Where one acts as a mere volunteer, he is not entitled to compensation for his services, even though such services be the efficient cause by which the vendor and the vendee are brought together and a sale closed. [Delahunt v. Thuener, supra; Windsor v. International Life Insurance Co., supra.]

2. The law is also well settled in this State that, where one performs services for another at the instance and request of such other, the law implies that such other agreed to pay the reasonable value and worth of such labor and that proof of the performance of the services and of the acceptance thereof by the defendant makes a *prima facie* case. [Sprague v. Sea, 152 Mo. 327, 53 S. W. 1074.]

The law is also well settled that, where an act done is beneficial, the subsequent assent of the beneficiary will be sufficient evidence from which the jury will be authorized to find that such act was done upon defendant's request. [Kerr v. Cusenbary, 60 Mo. App. 558, l. c. 563.]

Nor is it in all cases necessary for plaintiff to prove the express assent of the defendant to authorize the jury to find a previous request; it may infer the same from defendant's knowledge of the plaintiff's acts or from his silent acquiescence. [Strother v. DeWitt, 98 Mo. App. 293, 71 S. W. 1129.]

The rule is that, when a party voluntarily does an act or renders service and there is no intention at the time that he should charge therefor or understanding that the other should pay, he will not be permitted to recover, for that which was originally intended as a gratuity cannot subsequently be turned into a charge.

3. Whether a beneficial act done or service rendered in any case was intended as a gratuity is always a question for the jury to determine under all of the circumstances as disclosed by the evidence. "Where such a promise or undertaking is implied it can be overcome in only one of two ways: that is to say, by proving either that it was not the intention of the donor at the time to charge, or that there was a mutual understanding, express or implied, that no charge was to be made." [Strother v. DeWitt, supra, l. c. 300 and 301 of 98 Mo. App.]

It was said by this court in Piper v. Allen (Mo. App.), 219 S.

W. 98, l. c. 101: "Ordinarily, when one person performs valuable services for another who accepts the same, and the circumstances surrounding the transaction do not show the services were to be gratuitous, or, where one person performs services for another at the latter's request, the law implies a contract to pay their reasonable value. [Crain v. Miles, 154 Mo. App. 338, 134 S. W. 52; Horn Trunk Co. v. Johns, 202 S. W. 427.] True, no one can make another his debtor without the latter's consent, but even in the absence of a specific request, ordinarily, if one stands by in silence and sees another performing labor for him, of which he accepts and enjoys the benefits, a promise to pay may be inferred. [Sidway v. Missouri Land, etc.. Co., 187 Mo. 649, 663, 86 S. W. 150; Sprague v. Sea, 152 Mo. 327, 323, 53 S. W. 1074; Nugent v. Armour Packing Co., 208 Mo. 480, 491, 106 S. W. 648.]

"Where an act done is beneficial, the subsequent assent of the beneficiary will be sufficient evidence from which the jury will be authorized to find a previous request, and express assent is not necessary, since that may be inferred from the beneficiary's knowledge of the other's acts and the former's silent acquiescence in them. [Kerr v. Cusenbary, 60 Mo. App. 558, 563; Strother v. De Witt, 98 Mo. App. 293, 298, 71 S. W. 1129.]"

This we take to be the true statement of the law in Missouri.

4. In view of the record in this case, under the authorities last cited, there is substantial evidence in plaintiff's behalf to justify the submission of the cause to the jury upon the theory of an implied contract between plaintiff and the deceased, Milton Thompson, for plaintiff's services in the sale of the lumber yards in question. There is evidence tending to show that Mr. Thompson was the owner of a number of farms and other properties and that there was a working arrangement between himself and plaintiff under which plaintiff was engaged in procuring purchasers for and in making sales and trades of properties belonging to Mr. Thompson and that he had been actively so engaged under said arrangement since January 1, 1927. There is evidence tending to show that, during the greater part of the month of March, 1927, he was engaged in an endeavor to negotiate and conclude a sale of the Thompson-Parker Lumber Company yards in question to W. B. Jones and to the J. C. Jones Lumber Company or to the Logan-Moore Lumber Company, of which Mr. Thompson was fully cognizant and to which he not only assented but in which he participated and acquiesced. The said Milton Thompson and Mr. Jones, who at that time was an officer of the J. C. Jones Lumber Company, were frequently at plaintiff's home during the time of plaintiff's endeavors to negotiate and make the sale of said yards. The plaintiff, in the course of his efforts to make a sale of said yards, called on Mr. Jones a number of times and finally closed a deal with him for the purchase of said

yards by the J. C. Jones Lumber Company, of which company Mr. Jones was the representative. Mr. Thompson frequently discussed with plaintiff the progress of the negotiations for the sale as they progressed and, upon one occasion, together with the plaintiff, took Mr. Jones to Raytown to inspect the Raytown yard. On this trip, the prospective sale of the yards was discussed by all of them. On occasions while the plaintiff was talking with Mr. Jones concerning the sale of said yards to him or the other parties mentioned, he conferred with Mr. Thompson over the telephone; and Mr. Thompson talked with him with respect to such sale. On one of these occasions, the sale price of said yards was discussed by plaintiff with Mr. Thompson over the telephone, in which discussion Mr. Thompson submitted to plaintiff a certain price for submission to Mr. Jones for which he was willing to sell the yards and for which Mr. Jones might buy them, to which price when submitted to him by plaintiff Mr. Jones agreed; and the deal was closed. Thereupon, the written contract of March 23, 1927, was entered into and was fully carried out by Mr. Thompson and the other parties thereto. There was no evidence to the effect that plaintiff's services were to be gratuitous or that he did not intend to charge therefor or that Thompson-Parker Lumber Company or the deceased did not intend to pay therefor.

Such services and the contract of sale in which they culminated were beneficial to Mr. Thompson and his associates. The sale of the yards was what they desired. The evidence sufficiently shows that plaintiff was the procuring cause of the sale. He found the purchaser for the yards, for both the real estate and the lumber; and he brought the minds of the sellers and the buyer together and closed the deal for the sale.

The Thompson-Parker Lumber Company and the deceased not only accepted the benefits of plaintiff's services but had full knowledge of the same as they were being performed, assented thereto, acquiesced therein, and participated therein. There is no evidence of any express contract. The evidence is and was sufficient to authorize the jury to infer an implied contract by the Thompson-Parker Lumber Company with the plaintiff for plaintiff's services in procuring a purchaser and making such sale and for the payment to the plaintiff of the reasonable value of such services.

5. The facts in the case of Windsor v. International Life Insurance Company, supra, cited by defendant in her brief, are entirely different from the facts in the case at bar. In that case, there was neither evidence of an express contract of employment between the owner of the property and the broker nor evidence of facts sufficient to develop an implied contract of employment. Nor was there evidence sufficient to show that the owner had accepted and recognized the broker as its agent so as to entitle the broker

to recover compensation based upon a ratification of his acts and services by the owner.

Likewise, in the case of Delahunt v. Thuerner, supra, cited by defendant, there was no evidence whatever of an express contract of employment between the owner of the property and the broker or of the facts from which a contract of employment might be implied.

Again, in the case of Bassford v. West, 124 Mo. App. 248, 101 S. W. 610, cited by defendant in her brief, the facts were wholly different from the facts in the case at bar. In that case, there was no evidence of an express contract of employment between the owner of the property and the agent and no sufficient evidence of facts from which a previous contract of employment might have been implied. It was there held that the mere introduction of a purchaser to the owner of land by a real estate agent, where the agent had not previously been employed to sell the property, does not entitle the agent to a commission on a sale thereafter concluded between the owner and the purchaser. No such situation as that is presented here.

In this case, there is found proof of facts sufficient from which a contract for plaintiff's previous employment by the said Milton Thompson to find a purchaser for and to make a sale of the lumber yards in question may be implied.

Defendant's contentions under this head are denied. There is sufficient evidence in plaintiff's behalf to make a submissible case upon the issue of employment; and the demurrer was rightly ruled so far as such issue is involved.

6. Next we will dispose of the defendant's contention that plaintiff's cause of action was barred by the five-year statute of limitation and that, for such reason, her demurrer should have been granted.

In its final analysis, this contention seems to be based upon the fact that the deal for the sale of the yards in question was consummated and the contract therefor entered into on March 23, 1927, and that plaintiff's action was not instituted until April 2, 1932, over five years thereafter, and upon the further claim that plaintiff's cause of action for compensation accrued upon the consummation of the sale of the yards and the entering into the written contract therefor by his principal, Thompson-Parker Lumber Company, with the purchaser, J. C. Jones Lumber Company, on March 23, 1927, and that, at such time, he had the right to institute an action for his compensation and the five-year statute of limitation began to run against him on his cause of action therefor on such date and had fully run on April 2, 1932, at the time plaintiff instituted this action.

It is insisted by the defendant that a real estate broker or agent under his contract of employment performs his duty and has earned

and is entitled to his compensation upon the consummation of his deal and the acceptance by his principal of the purchaser produced by entering into a written contract of sale with such purchaser and that the statute of limitations begins to run against his claim for compensation from that time.

It is true that a real estate broker or agent under his ordinary contract of employment, without any agreement to the contrary, is held to have performed his duty and to have earned and to be entitled to his compensation upon the consummation of his deal and the acceptance by his principal of the purchaser produced by entering into a written contract of sale with such purchaser, but it does not always follow that a cause of action accrues at such time to such agent or broker for his compensation which he may assert in court or that the statute of limitations begins to run against his claim for compensation from that time.

Whether a cause of action accrues at such time to the plaintiff for his compensation which he may assert in court or whether the statute of limitations begins to run against his claim from that time depends on whether the amount of such compensation is agreed upon and fixed or is capable of ascertainment and of being known at such time.

Our statute, section 860, Revised Statutes of 1929, applicable to this controversy, provides as follows:

"Civil actions, other than those for the recovery of real property, can only be commenced with the periods prescribed in the following sections, after the causes of action shall have accrued: Provided, that for the purposes of this article, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained."

Under this section, it has been held that a cause of action has accrued when a right exists to institute a suit for its enforcement. [Stark Bros. v. Gooding, 175 Mo. App. 353, 162 S. W. 333; Boyd v. Buchanan, 176 Mo. App. 56, 162 S. W. 1075.]

A fundamental rule, applicable to the construction of all limitation statutes, is that the same may be deemed to begin to run only when the cause of action asserted accrues to the person asserting it and that it does not accrue in the legal sense until it comes into being and such party has the right to assert the same in court. [State ex rel. Fehrenbach v. Logan, 195 Mo. App. 171, 190 S. W. 75; 25 Cyc. 1067.]

The expression "cause of action" has been repeatedly the subject of decision, and it has been held that the cause of action arises at the time that the debt may first be recovered by action. The right

to bring an action may arise on various events; but it has always been held that the statute runs from the earliest time at which an action can be brought.

7. The question in this case is: "When did plaintiff's cause of action for compensation come into being so that plaintiff had a cause of action therefor which he had a right to assert in court?"

It did not necessarily accrue, under the statute, so that he had a cause of action therefor and so that the statute of limitations began to run against him thereon upon the consummation of the sale and the entering into of the written contract, unless at that time the amount of plaintiff's compensation was fixed and was capable of ascertainment and of being known. It will be observed that the statute says that, for the purposes of this article (limitations), the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs (which, applied to the facts in this case, is when the sale was consummated and the written contract was entered into and plaintiff's compensation was earned but the amount thereof remained unascertained and unpaid) but shall be deemed to accrue when the damage resulting therefrom or the amount thereof becomes capable of ascertainment and, if there be more than one item of damage, then when the last item be capable of ascertainment. In this case, the record shows that the amount of the compensation to which plaintiff was entitled was not known on March 23, 1927, at the time that the sale was consummated and the written contract was entered into, and was not capable of ascertainment on that date but first became capable of ascertainment and of being known on April 2, 1927. Only an agreement existed on March 23 by which the basis was provided for the determination, computation, and ascertainment of such compensation to be thereafter made. True, the compensation to which plaintiff was entitled on that date for the sale of the real estate was ascertainable at that time for the reason that the agreed price of said real estate in the sale was fixed at $37,000 and to arrive at the amount of plaintiff's compensation on that item was a mere matter of calculation, requiring a few moments only; but the sale price of the merchandise, lumber, and other materials in the yards had not been agreed upon and was not known and was not capable of ascertainment and of being known on that date for the reason that, to arrive at such sale price, inventories thereof were required to be made and the computation of the value of the different items shown thereby was required to be made, based upon established price lists agreed to by the parties to the written contract, which required until April 2 thereafter to be made and completed. This had the effect of staying the operation of the statute of limitation.

Under the statute, the cause of action could not accrue until the sale price of the merchandise and lumber in said yards was capable

of ascertainment and of being known. Until such time, plaintiff could not know the amount of the compensation to which he was entitled and had no cause of action therefor that he might assert in court. No cause of action for such compensation came into being prior to the time the amount thereof was capable of ascertainment, which, under the record, was on April 2, 1927; and the statute of limitation did not, therefore, begin to run against plaintiff until that date. The defendant's demurrer was rightly ruled against her.

8. We are not impressed with defendant's contention that the words "capable of ascertainment" as used in the statute mean merely "susceptible of ascertainment" and that, because a basis existed for the computation and ascertainment of plaintiff's compensation on March 23, 1927, at the time that the deal was closed and the contract for the sale and the purchase of the lumber yards in question was entered into, therefore such compensation was capable of ascertainment on that date within the meaning of the statute, so that a cause of action accrued to plaintiff therefor on said date and so that the statute of limitation became operative against his claim at that time. Under the facts in the record, such compensation was not ascertainable at that time and not thereafter, on the basis existing at that time for its computation and ascertainment, until April 2, 1927.

The words "capable of ascertainment" as used in the statute mean capable of ascertainment and of being known at the time and not merely susceptible of ascertainment. No other reasonable construction can be given them.

Until such time as the amount of his compensation was capable of ascertainment and of being known, no cause of action accrued to plaintiff therefor upon which he could assert a cause of action; and, until such time, the statute of limitation was not set in operation against his claim therefor. A cause of action did not come into being and accrue to plaintiff for his compensation until such time that such compensation was first capable of ascertainment and of being known, and the statute of limitation could not become operative until such time.

The authorities cited by defendant in her brief in support of her contention that the statute of limitation became operative against plaintiff's claim for compensation on March 23, 1927, at the time that the deal was consummated and the written contract of sale and purchase entered into, are not applicable under Section 860, Revised Statutes of 1929, supra, to the situation here presented.

9. It follows that defendant's complaint of error in the refusal by the trial court of the instructions lettered "C" and "D," which were to the effect that the plaintiff's demand is barred by the five-year statute of limitation, is denied. Such instructions were properly refused.

334

. 10. The final complaint of defendant relates to the admission of certain evidence upon the trial concerning the activities of the plaintiff in handling and making sales and trades of properties generally belonging to Mr. Thompson, including advertisements thereof and responses thereto, for a long time prior to the sale of the lumber yards. Unless such activities were shown to have been connected with the sale of the lumber yards in question, such evidence was objected to by the defendant. Such a showing was not made.

The plaintiff contends that such evidence was competent for the purpose of showing the general authority of the plaintiff as an agent of the deceased, Milton Thompson, for the sale of his properties, which included the lumber yards in question.

We cannot agree with plaintiff's contention; nor are we inclined to hold that such evidence, if competent, was sufficient to show any general agency upon plaintiff's part to sell the lumber yards in question. Defendant's objection to such evidence should have been sustained, and such evidence should have been excluded.

However, there are sufficient other facts in the record, as we have found, from which plaintiff's agency to make the sale of the lumber yards in question may be implied and upon which the verdict of the jury may be based. Such being true, it cannot be said that the action of the trial court in overruling defendant's objections and in admitting the evidence objected to and complained of was prejudicially erroneous or that defendant was prejudicially affected thereby so as to warrant a reversal of the judgment. There is other evidence sufficient to support the verdict.

We have examined and considered the entire record and passed upon all the points presented in the briefs and find no reversible error therein. The verdict was for the right party and, likewise, the judgment entered thereon.

The judgment of the trial court is affirmed. All concur.