John KEESHAN (Plaintiff), Appellant,

v.

EMBASSY INVESTMENT COMPANY, a Corporation, Sam Koplar, and Frank X. Jones (Defendants), Respondents.

No. 29659.

St. Louis Court of Appeals.

Missouri.

July 2, 1957.

James J. Milligan, St. Louis, for appellant.

Jones, Hocker, Grand, Peper, Martin & Roudebush, and Harold B. Bamburg, St. Louis, for respondents Embassy Investment Co. and Sam Koplar.

Paul F. Plummer, St. Louis, for respondent Frank X. Jones.

MATTHES, Judge.

In count one of his petition, John Keeshan, plaintiff, appellant, seeks to recover $5,250 alleged to be the reasonable value of his services in procuring a loan for the defendants; in count two of the petition, voluntarily dismissed at the outset of the trial, plaintiff sought recovery of $12,500 as a real estate broker's commission. At the conclusion of plaintiff's case, upon motion, the court directed a verdict for all of the defendants. From the en-

suing judgment plaintiff has brought the case to this court on appeal. The meritorious point here presented is focused on the sufficiency of the proof to make a jury case. We therefore will consider the evidence in the light most favorable to plaintiff.

Keeshan is a real estate broker, and has specialized in "mortgage loans". He had known defendant Frank X. Jones (also a real estate broker) for six years prior to the trial. In the early part of 1953, plaintiff was informed by Jones that he had the exclusive right to sell the Embassy Apartments located at Washington and Union Boulevards, in St. Louis, Missouri. At that time an oral arrangement or understanding was entered into between plaintiff and Jones, the substance of which was that plaintiff could undertake to sell the property, but the names of prospective buyers would have to be first registered with Jones, who would in turn submit the names of the prospects to defendant Sam Koplar (sometimes referred to as Koplar), said to be the principal stockholder and managing officer of defendant Embassy Investment Company (sometimes referred to as Embassy). If Koplar's approval was obtained, plaintiff was at liberty to exhibit the property to his prospect. In the event of a sale the commission was to be split three ways—one-third to Harry Rhodes, who, according to plaintiff's testimony, had assisted Jones in securing the exclusive contract, one-third to Jones, and one-third to plaintiff. A price of $750,000 had been placed on the property by the owner, and there was an indebtedness thereon in the form of a first deed of trust for "about $280,-000.00".

Following the understanding between plaintiff and Jones, plaintiff exhibited the property to at least five different parties. In each instance the prospect complained about the wide variance between the amount of the loan and the asking price. Plaintiff conceived the idea of securing a larger loan on the property so that the capital investment of a purchaser would accordingly be reduced with the net result of enhancing the opportunity to sell the property. Following several conversations with Jones wherein the matter of a new loan was discussed, the latter told plaintiff to "get as big a loan as you can". Plaintiff then opened negotiations with one S. R. Kinsella, Vice-President of Giraldin Bros. Real Estate Company, described as mortgage bankers. This concern represented three insurance companies for the purpose of securing loans for them and of servicing the loans by collecting payments thereon. It appears that plaintiff first suggested to Mr. Kinsella that a loan be placed on the property for $620,000. Plaintiff was told that consideration would not even be given an application for such amount, and Kinsella suggested a figure of $550,000. It is clear from plaintiff's testimony that Jones, and not plaintiff, made all necessary contacts with the owner with respect to refinancing the property. A formal application for $550,000 was prepared by Kinsella or his firm, and was given by plaintiff to Jones, who had it executed by the owner. This application, filed on July 14, 1953, was rejected by the Great West Life Insurance Company of Canada for whom Giraldin Bros. Real Estate Company was acting. Later an application was prepared for a loan of $525,000. The pertinent portions thereof are:

"Application for Loan

"St. Louis, Mo., August 4, 1953.
"To Giraldin Bros. Real Estate Company.

"In consideration of your inspecting the property, situated in the City of St. Louis, Mo., Lot 155′ 141′ 11¼″, with the improvements described below, and known as house number Embassy Apartments, 530 N. Union Blvd. I hereby give you an irrevocable option for 30 days, to procure for me a loan of $525,000., to be secured by first deed of trust on said property, with perfect title; * * *".

"I agree to pay you a commission of ½% for procuring this loan and also to pay or reimburse you for title examination, recording, releasing, and notary fees; all of which you may deduct from loan.

\*   \*   \*   \*   \*   \*

"The Embassy Investment Company

"By: Sam Koplar"

This application was accepted and approved by the insurance company, and loan papers, dated October 30, 1953, were prepared and executed by the necessary parties. Subsequent to the making of the loan, the date of which does not appear, the property was sold, but not through the efforts of Jones or plaintiff, and inasmuch as it developed that Jones did not have an exclusive listing contract at the time of the sale, neither he nor plaintiff received a fee or commission on the sale of the premises.

Additional facts pertinent to the points here presented will be considered and discussed in the course of the opinion.

Plaintiff contends that the court improperly excluded certain competent evidence. Since the court's action in this respect could materially affect the vital question of whether a jury case was made, we shall first examine and dispose of these points.

■ While plaintiff was being interrogated on direct examination he was requested to relate certain conversations with defendant Jones. When objections by counsel for defendants Embassy and Koplar were sustained on the ground that such conversations would not be binding upon said defendants, counsel for plaintiff pursued the matter no farther by making an offer of proof in either instance. In this situation we are unable to determine whether the testimony sought to be elicited was proper and germane to the litigated issue. It is a fundamental rule of procedure in this jurisdiction that when an objection to a proper question is sustained, an offer of proof must be made at the time showing what evidence will be given if the witness is permitted to answer, the purpose and object of the testimony, and all facts necessary to establish its admissibility. Unless this is done there is nothing to review on appeal. State ex inf. Mooney ex rel. Stewart v. Consolidated School Dist. No. 3, Mo.App., 281 S.W.2d 511, loc. cit. 515, and cases there cited; Pitha v. St. Louis Public Service Co., Mo.Sup., 273 S.W.2d 176. Since the record herein clearly demonstrates that plaintiff did not take the essential steps to preserve the matter for review, we must rule that the contention is without merit.

■ The next point deals with the exclusion of a letter written by plaintiff to defendant Jones. Plaintiff testified that a copy thereof was sent by him to defendant Koplar. The letter appears in the transcript and has received our careful consideration. We are of the opinion that it was properly excluded. It was written on December 28, 1953, more than two months subsequent to the time that the loan transaction was finally consummated, and long after the performance by plaintiff for which he seeks compensation. Fairly considered, the letter constituted nothing more than plaintiff's version of the controversy which had developed between the parties, and a demand for a "financing fee" if the property was off the market because the owner did not want to sell, or "a participation in the sales fee" if the property was off the market because it had been sold. The demand for payment of a fee could not under any theory have assisted plaintiff in constructing a submissible case. And the remainder of the letter constituted self-serving and voluntary declarations rendering it inadmissible. Hussey v. Robison, Mo.Sup., 285 S.W.2d 603, loc. cit. 608; E. C. Robinson Lumber Co. v. Cottonseed Delinting Corp., Mo.App., 207 S.W.2d 63, loc. cit. 67.

■ Finally the complaint is made concerning the court's action in sustaining an

objection by counsel for defendants Embassy and Koplar to plaintiff's Exhibit A purporting to be a detailed statement showing income derived from the apartment building and expenses incident to owning and operating the same. The statement was ruled admissible as to defendant Jones. We have considered the circumstances as related by plaintiff under which the statement was furnished to him, as well as the statement itself, and have concluded that the trial court's action was correct. A sufficient reason for rejecting the statement as to Embassy and Koplar is the complete lack of proof that it was prepared by them or at their instance and request. Even if we went so far as to assume, as plaintiff suggests, that the owner of the property caused the statement to be made, there is no evidence that it was prepared for use by plaintiff in his efforts to negotiate a loan. Clearly plaintiff was obliged to lay the proper foundation before the evidence became competent as to defendants Embassy and Koplar.

This brings us to the basic and principal point urged on this appeal.

■ As stated in Kolb v. Howard Corp., Mo.App., 219 S.W.2d 856, loc. cit. 858, the law of quantum meruit is well-defined and understood. Ordinarily where one renders valuable services for another, at his request, without any understanding as to compensation, the law implies a promise to pay the reasonable value of the services rendered. T. L. Horn Trunk Co. v. Johns, Mo.App., 202 S.W. 427, loc. cit. 428, 429, and cases cited; Sprague v. Sea, 152 Mo. 327, loc. cit. 332, 53 S.W. 1074; Kolb v. Howard Corp., supra, Mo.App., 219 S.W. 2d 856, loc. cit. 858, 859; Abresch v. Schultz, Mo.App., 216 S.W.2d 134. Indeed, such is likewise the case, ordinarily, where services are rendered to another, though without request, if the recipient knowingly accepts and avails himself thereof. T. L. Horn Trunk Co. v. Johns, supra, 202 S.W. 427, loc. cit. 429; Crain v. Miles,

154 Mo.App. 338, 134 S.W. 52; Piper v. Allen, Mo.App., 219 S.W. 98, loc. cit. 101; Patrick v. Crank, Mo.App., 110 S.W.2d 381.

Although plaintiff does not contend that a submissible case was made against defendants Embassy and Koplar on the theory that an express contract existed between him and said defendants, or that he was requested or employed by them to render services in connection with procuring a loan, he does vigorously insist that the facts bring this case within the second rule hereinabove stated, that is, plaintiff contends that he rendered valuable services which inured to the benefit of and were accepted by defendants Embassy and Koplar, and that from this proof the law implies a promise on the part of said defendants to pay the reasonable value of the services.

■ It can hardly be denied that there was sufficient evidence from which the jury could find that plaintiff rendered services which were a factor in bringing about a loan. But beyond that we find no proof which brings this case within the rule contended for. There are no facts from which the jury could fairly find or reasonably infer that said defendants *knowingly* accepted the benefits of plaintiff's labor. T. L. Horn Trunk Co. v. Johns, supra; Kolb v. Howard Corp., supra; no proof to justify a finding that Embassy and Koplar stood by in silence knowing that plaintiff was performing services which would redound to their benefit. Piper v. Allen, supra, 219 S.W.2d loc. cit. 101; Lewis v. Thompson, 231 Mo.App. 321, 96 S.W.2d 938, loc. cit. 942. In fact there is not a shred of evidence before us from which it can fairly be said that Embassy and Koplar even knew that plaintiff existed and was in the picture for the purpose of selling the property or procuring a loan thereon. Neither Jones, Koplar, nor any other officer of Embassy testified in the case. Plaintiff must and does rely upon his own testimony, that of Mr. Kinsella,

and a witness who merely gave an opinion as to the value of plaintiff's services. And while it appears from plaintiff's testimony that Jones dealt with Mr. Koplar in securing the two formal loan applications, the record is wholly barren of competent evidence from which a finding could be made that plaintiff's activities were brought to the attention of Embassy and Koplar prior to the date the loan transaction was finally consummated.

■ Another theory is advanced by plaintiff in his effort to overturn the trial court's action. He contends that defendant Jones was not only the agent of the other defendants for the purpose of selling the property, but was clothed with the broad power to, and that in fact he did appoint plaintiff as subagent for the express purpose of securing the loan, and consequently Embassy and Koplar became obligated to pay the reasonable value of plaintiff's services. The case of Lanowah Inv. Co. v. John Hancock Mutual Life Insurance Co., 236 Mo.App. 1062, 162 S.W.2d 307, recognizes the rule that a general agent may have power not only to appoint a subagent but to fix his compensation and bind the principal to pay same. In Rutledge v. United Services Life Ins. Co., 84 U.S.App. D.C. 61, 171 F.2d 27, a statement of the general rule appears as follows, 171 F.2d loc. cit. 28: "A principal is commonly under no obligation to compensate his agent's agents unless his agent has, and also exercises, authority not merely to use their services in discharging his obligations to his principal but also to make them agents of his principal. Mechem, Agency, 2d Ed., § 1701. Accordingly a salesman for a real estate agency, who finds a purchaser for property that the agency has been employed to sell, must commonly look for his compensation to the agency that employed him and not to the property-owner who employed it."

■ The evidence affords no proof whatever that Jones had the express or implied authority to obligate the defendants Embassy and Koplar to pay for the services of one chosen by Jones to assist him in selling the property or procuring a loan thereon.

■ From the foregoing analysis of the contentions respecting the question of whether a submissible case was made against Embassy and Koplar and our conclusions in regard thereto, it should be apparent that the trial court was also correct in directing the jury to find for the defendant Jones. Plaintiff's theory of recovery against Embassy and Koplar rests on the premise that they were recipients of beneficial services performed by plaintiff. It stands conceded that Jones owned no interest in the property. As a real estate broker he and plaintiff had one common interest, namely, to sell the property and receive a fee for doing so. Neither plaintiff nor Jones had any other concern with the apartment building. In the trial of the case plaintiff, with candor, testified he had not asked "Jones to pay it (loan fee) individually", and that he never contemplated that Jones should pay the amount he is seeking from the other defendants. And although plaintiff urges that the proof was sufficient to permit a jury to pass upon the question of liability of Embassy and Koplar, he advances no theory and points to no evidence upon which defendant Jones could be held.

■ For yet another reason, equally if not more compelling, the trial court properly ruled the motion to dismiss as to all three defendants. The evidence conclusively established that plaintiff, as a real estate broker, was motivated to act as he did for the sole purpose of ultimately procuring a purchaser for the property. He realized that a larger loan would attract more prospective purchasers, thus enlarging his opportunity of eventually collecting a commission. That plaintiff, and not the defendants, conceived the plan to obtain a larger loan is clearly demonstrated by his

suggestion to Jones that, "If we could get a loan on the property, then we might be able to sell it." Furthermore, it appears that after the application for the $525,000 loan was prepared, plaintiff examined it, and his attention was specifically directed to the provision therein requiring the property owner to pay a fee of ½% of the amount of the loan to Giraldin Bros. Real Estate Company "for procuring this loan". Plaintiff was told at that time by Mr. Kinsella that the loan would be held up if he was not satisfied with the commission arrangement as expressed in the contract. Not only was there no objection voiced by plaintiff, but he stated that he was satisfied as "they're goin' to give me the sales commission and I don't want to block this deal because I've been assured that I'm in on the sale". The principle of law is well settled that there can be no recovery for services rendered voluntarily with no expectation at the time that compensation would be received therefor, Sherman Inv. Co. v. Sheehan, Mo.App., 199 S.W.2d 922, loc. cit. 926; Wood v. Lewis' Estate, 183 Mo.App. 553, 167 S.W. 666; Lewis v. Thompson, supra, 231 Mo.App. 321, 96 S. W.2d 938, loc. cit. 942, and this is true even though the services are rendered upon the request of the recipient thereof, Abresch v. Schultz, supra, Mo.App., 216 S.W.2d 134, loc. cit. 139. The only reasonable inference to be drawn from the facts before us is that plaintiff's efforts with respect to the loan were put forth without any intention at the time to charge or be compensated therefor.

From what has been said it is clear that the facts present no issue for a jury to determine, and the trial court properly directed a verdict in favor of the defendants.

The judgment is affirmed.

RUDDY, P. J., and ANDERSON, J., concur.