**Ralph C. SMITH, d/b/a Smith Company Realtors, Plaintiff-Respondent-Appellant,**

v.

**Alvin J. PIPER and Marjorie C. Piper, His Wife; and Harry Fine and Sadie M. Fine, His Wife, Defendants-Appellants-Respondents.**

Nos. 32625, 32626.

St. Louis Court of Appeals.

Missouri.

Nov. 21, 1967.

Motion for Rehearing or for Transfer to Supreme Court Denied Dec. 26, 1967.

Application to Transfer Denied Feb. 12, 1968.

Stemmler & Stemmler, St. Louis, for appellants-respondents Piper.

Newmark & Baris, St. Louis, for appellants-respondents Fine.

Shifrin, Treiman, Schermer & Susman, Sylvan Agatstein, St. Louis, for respondent-appellant Smith.

CLEMENS, Commissioner.

Plaintiff real estate broker sued the sellers (defendants Harry and Sadie M. Fine) and the buyers (defendants Alvin J. and Marjorie C. Piper) for a commission, contending that after he had been employed and brought the parties together they closed the $60,000 sale clandestinely. Plaintiff got a verdict and judgment for $3,600 actual and $1,000 punitive damages. The trial court denied defendants' after-trial motions as to actual damages but granted a new trial on the issue of punitive damages. Both sides have appealed. We relate the verdict-consistent evidence.

Plaintiff's salesman Thomas R. Nash called on Mrs. Piper (in connection with another matter) and learned that she and her husband wanted to buy a house. She said they wanted a four-bedroom home on a two-acre lot—the kind located on Country Aire Drive in St. Louis county—and would pay as much as $65,000. Mr. Nash had nothing like that listed for sale but told Mrs. Piper he would try to find something.

That same day Mr. Nash began canvassing the Country Aire neighborhood looking for a house that fit Mrs. Piper's description. His search ended at the Fine home, where he stated his business and asked Mrs. Fine if the house was for

sale. Coincidentally, Mrs. Fine had just been talking with her daughter about their year-long efforts to sell the house. She told Mr. Nash she and her husband had hoped to find a buyer the very next week, when Mr. Fine would be on vacation. Mr. Nash made notes as Mrs. Fine showed him through the house. She told Mr. Nash she could not set a price but her husband would call him the next morning.

As promised by his wife, Mr. Fine phoned Mr. Nash, saying they wanted "$60,000 net" for their home. Mr. Nash told him the prospective buyer (whom Nash did not name) was willing to pay as high as $65,000. Mr. Nash asked for and was given permission to show the Fine home to the prospective buyer at a $65,000 asking price. Mr. Fine suggested a time the next afternoon. Mr. Nash immediately went back to Mrs. Piper to arrange for an inspection of the Fine home. When Mr. Nash described and identified the property, Mrs. Piper told him that she and her husband knew the Fines and their home; that they had tried to buy it a year before but the price was too high—$72,000. Mr. Nash assured her the Fine home could be bought for $65,000, and she promised to call him about inspecting the house as soon as her husband returned from out of town, in four days.

Immediately after this conversation with Mrs. Piper, Mr. Nash phoned the Fines, telling them "I would like to have a written thirty-day listing to protect my interest and * * * verification that would allow me to show the home." The Fines agreed and told Mr. Nash he could come by for that purpose the next morning. When Mr. Nash arrived, Mr. Fine acknowledged his promise of the day before to give him a written listing. Mr. Fine said, however, he now had a prospect of his own and did not want Mr. Nash to show the house to anyone. He told Mr. Nash that a lady (Mrs. Piper?) had called him about the house just the day before. Later, Mrs. Piper told Mr. Nash she and her husband were no longer interested in the Fine home.

Those were the last words Mr. Nash had with Mrs. Piper and the Fines. But two months later he learned that the Fines had sold their home to the Pipers, for $60,000. The reasonable value of plaintiff's services for procuring a buyer for the Fine home was $3,600.

■ We first consider the Fines' liability for $3,600 actual damages. Their main point is that the evidence failed to show they agreed to employ plaintiff to produce a buyer for their home. To establish such an agreement between a broker and an owner it must appear that the owner authorized the broker to produce a buyer and the broker agreed to seek a buyer, and that the circumstances gave the owner reason to think the broker's services were not to be gratuitous but, instead, with expectations of compensation from the owner. See Ballentine v. Mercer, 130 Mo.App. 605, 109 S.W. 1037[5–7], where the court so held and commented: "It is customary for brokers to solicit employment. Their knowledge of the conditions of supply and demand, relating to the commodities in which they deal and of persons who are in the market to buy and sell, is a part of their stock in trade, and is an important factor in giving value to their services. Generally they do not work except for pay, and, when they tender their services, it is commonly understood the usual commission will be demanded if the services are accepted and prove beneficial." If this relationship is shown and if the broker is the efficient procuring cause of the sale, he is entitled to reasonable compensation. Hoover v. Whisner, Mo.App., 373 S.W.2d 176[4–6, 8, 9]; Longmire v. Diagraph-Bradley Stencil Mach. Corp., Mo. App., 176 S.W.2d 635[1–5].

■ From the facts related here the jury could have found: In the course of his business Mr. Nash discovered the separate facts that (1) the Fines wanted to sell their house for $60,000 net, and (2) the Pipers wanted to buy just that kind of house and would pay $65,000; that the

Fines wanted Mr. Nash to produce such a prospective buyer and knew Mr. Nash would expect to be paid if the sale was closed; that the two separate facts merged when Mr. Nash told Mrs. Piper the Fine home could be bought at the Pipers' price, thereby making Mr. Nash the efficient procuring cause of the eventual sale; and that $3,600 was reasonable compensation for plaintiff's services. This evidence entitled plaintiff to recover from the Fines.

The Fines cite authority holding that if a broker is a mere volunteer he is not entitled to compensation. True, but a volunteer broker is one who proceeds *without* an express or implied contract. Lewis v. Thompson, 231 Mo.App. 321, 96 S.W.2d 938[1–5]; Windsor v. International Life Ins. Co., 325 Mo. 772, 29 S.W. 2d 1112[1, 2]. We have held, however, that the evidence warranted a finding of an implied contract whereby the Fines promised to pay plaintiff if he produced a buyer. So, plaintiff was not a mere volunteer.

The Fines raise other points. They say that even if they offered to compensate plaintiff their promise was conditional, and their offer was withdrawn before plaintiff fulfilled the condition of the offer. They cite no authority. They argue that the only authority they gave Mr. Nash was to show their house. That is not the evidence. They also argue that an offer to pay a commission may be withdrawn anytime before the sale is consummated. That is not the law. Weisels-Gerhart Real Estate Co. v. Epstein, 157 Mo.App. 101, 137 S.W. 326[2]; Glassman v. Fainberg, Mo.App., 35 S.W.2d 950[8].

The Fines' last point is that Mr. Nash failed to tell them he was also acting as agent for Mrs. Piper; that this was a failure to disclose a dual agency and he thereby forfeited his commission. The Fines neither pleaded nor submitted this as a defense. Therefore, it can be effective only if plaintiff's conduct, according to his own evidence, defeats his claim as a matter of law. Shepley v. Green, Mo. App., 243 S.W.2d 772[1–6]; McClure v. Ullmann, 102 Mo.App. 697, 77 S.W. 325[2]. The evidence on this was that Mr. Nash truthfully told the Fines he had a prospective buyer willing to pay $65,000. He did not tell them—nor did they ask—the name of the prospect. Thus, the Fines' complaint is not one of concealment or misrepresentation but merely non-disclosure. The issue boils down to this: Was Mr. Nash duty-bound to volunteer the identity of the prospect, and did his failure to do so release the Fines from their obligation to pay him? We say no.

By the very nature of a broker's work he must deal with both buyers and sellers. There is nothing inherently wrong in non-disclosure of identity. The defense of dual agency—to defeat a broker's compensation—is based on misconduct, fraud, or bad faith that results in prejudice to his principal. Mere failure to identify a purchaser, without more, will not defeat a broker's claim for compensation. See Francis v. Saleeby, Mo. App., 282 S.W.2d 167[7], and the cases cited there. We reject the defense of dual agency.

Accordingly, plaintiff is entitled to judgment against the Fines for actual damages. This leads to the question of the Pipers' liability for actual damages.

The Pipers contend the court should have granted their after-trial motion for judgment. We agree. Plaintiff's verdict directing instruction against the Pipers required the jury to find that they authorized Mr. Nash to find a house for them "under such circumstances as to show an intention to charge therefor, and under such circumstances as to give defendants [Pipers] reason to think plaintiff expected to be paid." Yet Mr. Nash's testimony refuted both those necessary facts. He said that in none of his conversations with Mrs. Piper did either of them mention payment for finding a house for the

Pipers; that he had never known of a case where a purchaser paid a commission; that he expected to be paid by the sellers, in accordance with the common practice. Plaintiff's case against Mr. Piper was even weaker. He was out of town and Mr. Nash never talked with him; nor does the record show Mr. Piper knew anything of Mr. Nash's activities in the transaction.

Plaintiff argues however that the evidence warrants inferences that the Pipers conspired with the Fines to induce a breach of his contract for a commission. (See Downey v. United Weatherproofing, 363 Mo. 852, 253 S.W.2d 976[4–9]; and 86 C.J.S. Torts § 44.) Plaintiff did plead tortious conspiracy, but he submitted his case on breach of contract. In weighing the sufficiency of plaintiff's case we look only to the submitted grounds of recovery; other pleaded grounds for recovery are considered abandoned. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91[4–5]; Thaller v. Skinner & Kennedy Co., Mo., 315 S.W.2d 124[1]. We decline to decide liability on an abandoned allegation. The trial court should have granted the Pipers' after-trial motion for judgment as to actual damages because plaintiff failed to show an implied contract with them.

As said, the plaintiff got a verdict and judgment for $1,000 punitive damages against all four defendants. The trial court granted them a new trial on the ground the evidence did not support plaintiff's punitive damage instruction. The plaintiff appeals from that order.

This punitive damage issue will be considered separately as to the Pipers and the Fines. Our decision that plaintiff did not make a case against the Pipers for actual damages automatically frees them from liability for punitive damages. This, because an award of actual damages is a necessary foundation for punitive damages. Landum v. Livingston, Mo.App., 394 S.W. 2d 573[4]; 22 Am.Jur.2d, Damages, § 241.

As to the Fines, the plaintiff's submission for punitive damages was hypothesized on breach of an implied contract: that if they authorized Mr. Nash to produce a buyer for their house; that he did so under circumstances showing intention for payment; that the Fines did not pay him; and that if their conduct in those matters was willful, wanton or malicious then the jury could award punitive damages. The plaintiff has cited no authority to sustain his right to punitive damages, and we find none. But for narrow exceptions not present here, our courts have repeatedly held that punitive damages do not lie for breach of contract. Norris v. Letchworth, 167 Mo.App. 553, 152 S.W. 421[3]; Williams v. Kansas City Public Service Co., Mo., 294 S.W.2d 36[7]; 22 Am.Jur.2d, Damages, § 245.

Since the plaintiff was not entitled to punitive damages from any defendant, the trial court should not have submitted that issue. It would be useless to grant a new trial, as ordered below, and we must now render the judgment the trial court should have rendered. Civil Rule 83.13(c), V.A.M.R.; Wittels v. Jack Dubinsky & Sons, Mo.App., 343 S.W.2d 644 [4]; Steuernagel v. St. Louis Public Service Co., 361 Mo. 1066 (banc), 238 S.W. 2d 426[6].

It follows that the judgment and the order granting a new trial should be reversed, with instructions to enter a new judgment in favor of defendants Alvin J. Piper and Marjorie C. Piper, and in favor of plaintiff against defendants Harry Fine and Sadie M. Fine for $3,600, all costs to be taxed one-half against plaintiff and one-half against defendants Harry and Sadie M. Fine.

PER CURIAM.

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment and the order granting a new trial are hereby reversed, with instructions to enter a new judgment

in favor of defendants Alvin J. Piper and Marjorie C. Piper, and in favor of plaintiff against defendants Harry Fine and Sadie M. Fine for $3,600, all costs to be taxed one-half against plaintiff and one-half against defendants Harry Fine and Sadie M. Fine.

ANDERSON, P. J., WOLFE, J., and JOHN C. CASEY, Special Judge, concur.