Lois Woodruff, Appellant, v. E. M. Shores.—No. 39427.—190 S. W. (2d) 994.

Division One, December 3, 1945.

*White, White & White, Irvin White* and *Melvin J. Duvall* for appellant.

*Stringfellow & Garvey* for respondent.

VAN OSDOL, C.—Plaintiff has appealed from an order sustaining defendant's motion to dismiss plaintiff's petition in an

action instituted November 24, 1944, whereby plaintiff sought the recovery of $9000 actual and $100,000 exemplary damages.

Plaintiff alleged in her petition that defendant was at all times mentioned a duly licensed physician and engaged in the practice of his profession in Buchanan County; that on the 17th day of September 1936 plaintiff's husband filed an information in the County Court of Buchanan County alleging plaintiff was insane; that defendant on that date executed a certificate (see Sections 9323 and 9325 R. S. 1939, Mo. R. S. A. secs. 9323 and 9325) stating he had that day seen and examined plaintiff and believed her to be insane and a proper patient to be sent to the state hospital for the insane; that defendant appeared before the county court and verified the certificate which caused the court to commit the plaintiff as an insane person to State Hospital No. 2, St. Joseph, where she was confined until the 17th day of December 1936; that on the latter date the superintendent of the hospital paroled plaintiff to her husband who thereafter constantly threatened her with re-incarceration; that on the 28th day of August 1944 the Probate Court of Buchanan County found and declared plaintiff to be a person of sound mind and duly restored her as such for all purposes; that she was at all times sane, and not a proper patient for commitment as an insane person; that defendant did willfully and intentionally make and execute the certificate, and did under oath falsely and wrongfully represent to the county court that he had seen and examined plaintiff and believed her to be insane. Plaintiff further alleged that the defendant did not see or examine plaintiff on the 17th day of September 1936, nor had he at any prior time treated or examined her for any mental disorder; and that, as a direct result of the acts of defendant, plaintiff was deprived of her liberty and rights as a citizen and has suffered, and will in the future suffer, great pain of body and anguish of mind.

Defendant's motion to dismiss was based upon the ground that plaintiff's petition shows upon its face that her action is barred by limitation under Section 1016 R. S. 1939, Mo. R. S. A. sec. 1016. Counsel for plaintiff are of the opinion the petition states a cause of action against defendant for malpractice, and so informed the trial court. Assuming plaintiff's petition states a cause of action against defendant for a willful or negligent failure to perform a duty as a physician, plaintiff should have instituted her action within two years after the neglect complained of (Section 1016, supra), unless at the time her cause of action accrued she was disabled ("insane") as provided in Section 1020 R. S. 1939, Mo. R. S. A. sec. 1020; if so disabled, she would be at liberty to bring her action within two years after such disability was removed.

Plaintiff (appellant) assigns error in the trial court in sustaining the motion to dismiss, it being plaintiff's position that, until the adjudication by the Probate Court of Buchanan County finding and

adjudging her to be sane, she, although sane, was incapacitated from bringing her action by reason of the commitment and confinement brought about by defendant's certificate; and that under the provisions of Section 1020, supra, the period of time as provided by Section 1016, supra, did not commence to run until the adjudication of plaintiff's sanity by the probate court, August 28, 1944.

It must be plainly seen that plaintiff, in order to state a cause of action against defendant, has pleaded (and, in order to recover, would be required to prove by supporting evidentiary fact, inference or presumption) an ultimate fact essential to her recovery, that is, her sanity at the time she was committed as the result of defendant's certificate. It appears upon the face of plaintiff's petition that her action was instituted more than two years after September 17, 1936, when her cause of action accrued, placing upon her the onus of showing that she was under a disability within the purview of Section 1020, supra. The effect of the alleged adjudications of the county court and of the probate court, and the effect of whatever presumptions (conclusive or rebuttable) that should be indulged from the allegations of fact relating to plaintiff's commitment, the parole to her husband and her subsequent restoration as a person of sound mind, which would establish or tend to prove her disability, would, we believe, certainly disprove or tend to disprove plaintiff's allegation of sanity. And the plaintiff's allegation of her sanity at the time her cause of action accrued surely negatives the ultimate fact (that she was insane) which she would have the burden of proving in order that she should be entitled to the delay in filing her action as provided in Section 1020, supra. In the case of Harnett v. Fisher (1927), A. C. 573, 16 B. R. C. 238, a plaintiff, who was in a similar situation to that of plaintiff herein, had been awarded damages in an action against a defendant physician, the jury having found that the defendant had not exercised reasonable care in examining plaintiff, and that plaintiff was of sound mind when he was confined as insane as a result of the defendant's certificate. But the trial court entered judgment for defendant upon the ground that the action was barred by limitation, and the Court of Appeal affirmed the trial court's judgment. An appeal from the order of the Court of Appeal was perfected. The limitation period applicable to the action was that provided in Sec. III of An Act for Limitation of Actions, and for avoiding Suits in Law, 21 Jac. I, Chap. 16. Generally the Act is the model of legislation on the subject of limitation of actions in the United States. 17 R. C. L. 665. It was provided in Sec. VII of the Act, ''That if any Person or Persons that is or shall be entitled to any such Action . . . be or shall be at the Time of any such Cause of Action given or accrued, . . . Non compos mentis, . . . ; that then such Person or Perons shall be at Liberty to bring the same Actions, so as they take the same within such Times as are before limited, after their coming to or

being . . . of sane Memory . . . as other Persons having no such Impediment should have done." In reviewing the case in the House of Lords it was stated (16 B. R. C. at pages 244-5), "The ground of the decision of both Courts below may be tersely put thus. The jury found conclusively that on the day of the examination the appellant (plaintiff) was of sound mind, and he is not shown ever to have been otherwise. If, then, appellant never has been non compos mentis he could not bring himself within the disability section . . . " It was held that plaintiff's action was barred, and the order of the Court of Appeal was affirmed.

However, as we have said, it is contended by plaintiff that she, although sane, was in fact quite as disabled from instituting an action by reason of her commitment and confinement, and the subsequent parole to her husband, as if she were actually insane. It is urged that if a physician assumes to sign a statutory certificate of another's insanity and does so untruly without making or without the exercise of due care in making an examination or inquiry, then, if damage ensues, such physician should be held liable for the injury. See Hall v. Semple, 3 F. & F., 337; Ayers v. Russell, 3 N. Y. Supp. 338; Williams v. LeBar, 141 Pa. 149, 21 A. 525; 48 C. J., Physicians and Surgeons, sec. 128, p. 1133. And, at first glance, in such a case it would seem that a court should be liberal in construing a disability excepting section in order to permit such a plaintiff's recovery, if a consequent commitment and confinement as an insane person had the practical effect of keeping the sane plaintiff from a timely commencement of his action. But, while statutes of limitations were formerly regarded with little favor and courts devised numerous theories and expedients for their evasion, latterly they are considered as beneficial, as resting upon the sound public policy, and as not to be evaded except by the methods provided therein. Vol. I, Wood on Limitations, 4th Ed., sec. 4, pp. 7-11. It has been written that the legislature has fulfilled its duty to a citizen if reasonable time is given to apply for the redress of wrongs. More than that encourages strife, by reviving controversies that had been suffered to sleep, and reviving them, too, after it may have become difficult to understand their true character. Carson v. Hunter, 46 Mo. 467. The exceptions contained in statutes of limitations (statutes of repose, Carson v. Hunter, supra) are strictly construed and are not enlarged by the courts upon considerations of apparent hardship. Sec. 4 and Sec. 11b, Wood on Limitations, supra; 34 Am. Jur., Limitation of Actions, sec. 192, pp. 155-6; 17 R. C. L. 690; Harnett v. Fisher, supra; Powell v. Koehler, 52 Ohio St. 103, 39 N. E. 195. The Legislature of Missouri did not broaden the language of the excepting section to include a *sane* person, who notwithstanding is in fact disabled because wrongfully committed and confined as insane, from bringing an action; and to so broaden the section by construction would deny the effect of the plain meaning of

the word "insane." Of the words "Non compos mentis" as used in Sec. VII, Chapter XVI, Statutes of James, supra (as the word "insane" is used in Section 1020, supra), it was said in Harnett v. Fisher, supra, 16 B. R. C. at pages 245-6, "What those plain words mean is further shown, if that be necessary, by the words used to express the opposite state—namely, 'of sound memory.' They describe an actual mental condition, which the jury's word 'sane' negatives; and not a treatment imposed or a disability suffered, because the plaintiff has been wrongly supposed to be in that mental state, by whosesoever fault, even that of the defendant himself, this may have been brought about."

The order of dismissal should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.