**Fred S. BAUM, Plaintiff,**

v.

**Solomon J. TUREL, Vernon A. Weinstein, Wickersham Hospital and Mount Sinai Hospital, Defendants.**

United States District Court
S. D. New York.
June 27, 1962.

Samuel Kalmanash, New York City, for plaintiff (Benjamin Rubenstein, New York City, of counsel).

Carbarini & Kroll, New York City, for defendants, Solomon J. Turel and Wickersham Hospital (David S. Edgar, Jr., New York City, of counsel).

FEINBERG, District Judge.

This is a motion for summary judgment by two of four defendants. Jurisdiction is based on diversity of citizenship. For the reasons indicated below, the motion is granted as to the first and second causes of action in the complaint and denied as to the third.

Plaintiff Fred S. Baum underwent surgery on April 4, 1955, for the repair of a right inguinal hernia. The operation was performed in New York City by defendant Dr. Solomon J. Turel ("Turel"), a New York resident, at Wickersham Hospital ("Wickersham"). Wickersham is a named defendant in this action. In connection with the operation, Turel used black silk for suturing. Plaintiff was discharged from the hospital on or about April 16, 1955. Prior to discharge he complained of pain in his abdomen, fever and general discomfort. At that time,

according to plaintiff's allegations, Turel represented to him that his unsatisfactory condition was due to an abdominal abscess or a post-operative hernia. Plaintiff alleges that these representations were false and fraudulent, that they were made to induce him to refrain from bringing a malpractice action and that he relied on them to his detriment. It is clear from the papers before me that neither Turel nor Wickersham had any contact with plaintiff after late April or early May 1955.

Thereafter, plaintiff consulted other doctors about what seemed to be an unsatisfactory recovery from the operation. On December 16, 1955, defendant Dr. Vernon A. Weinstein ("Weinstein"), a New York resident, performed an exploratory operation at Mount Sinai Hospital ("Mount Sinai") in New York City. Mount Sinai is a named defendant in this action. Plaintiff's physical condition did not improve and he continued to be treated by Weinstein. Plaintiff apparently alleges that the false representations referred to above were also made by Weinstein. On or about June 4, 1958, Weinstein again operated on plaintiff and discovered, according to plaintiff's allegations, that the cause of infection and discomfort experienced since the first operation in April 1955 were black silk sutures used in that operation. Plaintiff filed his complaint in this Court on January 13, 1959.

Plaintiff's complaint contains three causes of action. The first is an action for malpractice against all four defendants; the second is an action in fraud based on the allegedly false representations referred to above;[1] the third cause of action is an action in contract apparently against all defendants. Damages of $150,000 are sought based on the first two causes of action while $4,816.29 is claimed under the third cause of action.

The motion for summary judgment is brought by defendants Turel and Wickersham on the grounds that (1) the first (and, apparently, the second) cause of action is barred by either the two-year New York statute governing malpractice actions (N.Y.C.P.A. § 50) or the three-year New York statute for injuries resulting from negligence (N.Y.C.P.A. § 49), (2) the third cause of action is really the same as the first and is, therefore, also time-barred, and (3) defendants are also entitled to judgment as a matter of law on the second cause of action apparently because plaintiff clearly did not rely on the "misrepresentations" to his detriment.

Plaintiff's response is that (1) the malpractice cause of action "accrued" when the third operation was performed in 1958 and, therefore, this action is timely; (2) the fraud which is the basis of the second cause of action was not discovered until June 1958, and, therefore, this action is timely; and (3) the third cause of action is in contract to which a six-year statute of limitations applies (N.Y.C.P.A. § 48).

On the first issue of when a malpractice action accrues, plaintiff cites a recent decision of the Supreme Court of the State of New Jersey, Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277 (1961). However, while plaintiff is a resident of New Jersey, upon the undisputed facts New York law would control as to all three causes of action. The operations were performed in New York, the representations, if any, were made in New York, the agreements, if any, were apparently made in New York, and under usual conflicts rules this Court would apply the law of New York. Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246 (1954); Kaufman v. American Youth Hostels, Inc., 6 A.D.2d 223, 177 N.Y.S.2d 587 (2d Dep't 1958) modified 5 N.Y.2d 1016, 185 N.Y.S.2d 268 (1959).

New York law clearly holds that a malpractice action accrues at the time of the allegedly negligent act. Conk-

---

1. It is not clear from the complaint whether this cause of action is against the two doctors only or includes the hospitals as well. Cf. pars. FIFTEENTH and TWENTY-THIRD of the complaint.

lin v. Draper, 229 App.Div. 227, 241 N.Y.S. 529 (1st Dep't 1930) aff'd mem., 254 N.Y. 620, 173 N.E. 892 (1930). In the Conklin case, a physician left a pair of forceps in a patient while operating for appendicitis. Over two years later, the presence of the forceps was disclosed on an X-ray taken by another doctor and a second operation was performed. Plaintiff brought suit within two years after the discovery of the forceps, but over four years after the first operation. The Appellate Division granted the defendant doctor's motion to dismiss and squarely held that the statute of limitations ran from the original malpractice and not from its discovery. This rule is reiterated in the more recent cases of Budoff v. Kessler, 284 App.Div. 1049, 135 N.Y.S.2d 717 (2d Dep't 1954); Rokita v. Germaine, 12 Misc.2d 84, 176 N.Y.S.2d 34 (Sup.Ct. Queens Co. 1958) aff'd 8 A.D.2d 620, 185 N.Y.S.2d 272 (2d Dep't 1959); Dorfman v. Schoenfeld, 26 Misc.2d 37, 203 N.Y.S.2d 955 (Sup.Ct.N. Y.Co.1960), appeal dismissed 11 A.D.2d 1024, 214 N.Y.S.2d 289 (1st Dep't 1960).

With regard to the second cause of action in fraud, this too would seem barred by New York decisions. Tulloch v. Haselo, 218 App.Div. 313, 218 N.Y.S. 139 (3d Dep't 1926); Calabrese v. Bickley, 208 Misc. 407, 143 N.Y.S.2d 846 (Sup. Ct.N.Y.Co.1955), modified 1 A.D.2d 874, 150 N.Y.S.2d 542 (1st Dep't 1956); Kleinman v. Lack, 6 A.D.2d 1046, 179 N. Y.S.2d 194 (2d Dep't 1958); Golia v. Health Ins. Plan of Greater New York, 6 A.D.2d 884, 177 N.Y.S.2d 550 (2d Dep't 1958) aff'd mem., 7 N.Y.2d 931, 197 N.Y.S.2d 735 (1960).

Thus, in the Calabrese case, the trial court pointed out (at 143 N.Y.S.2d 848):

" * * * As malpractice covers every way in which a patient is injured through the dereliction of a doctor in his professional capacity, the approach, depending on the facts,

can be through any of several familiar forms of action. But no matter what the approach, it remains an action for malpractice, not one for deceit, contract or anything else. A well recognized ground for recovery is where a physician represents that he has the skill to perform a certain operation when in fact he does not. This form of action requires the same elements of proof that an action in fraud requires, yet it could not be successfully disputed that as between the two it is an action for malpractice. Where, as here, the fraud consists in concealing the malpractice, it has been held that the gravamen is the malpractice and the concealment merely an item in chain of circumstances causing the damage."

Similarly, in the Golia case, the Appellate Division characterized purported causes of action for fraud and contract as causes of action for malpractice, "at least for time limitation purposes," 177 N.Y.S.2d at 552.

In Kleinman v. Lack, it was held (at 179 N.Y.S.2d 194) that: "Alleged fraud in concealing the injury does not preclude pleading the Statute of Limitations as a defense." In that case, the Appellate Division granted summary judgment to defendant on the ground that the action was barred by the two-year statute of limitations.

There may be some authority for the proposition that a fraud action growing out of a malpractice situation is not barred in some atypical situations by the statute of limitations applicable to a malpractice suit.[2] But on the undisputed facts of this case as they appear on the motion for summary judgment, the law in New York at the present time bars the second cause of action as well as the first. It is true that the complaint alleges that the fraudulent representa-

---

2. Cf. McAlpin v. Browne, 15 Misc.2d 255, 181 N.Y.S.2d 525 (Sup.Ct.N.Y.Co.1958) and the modification in Calabrese v. Bickley, 1 A.D.2d 874, 150 N.Y.S.2d 542 (1st Dep't 1956) of the lower court's dismissal of the fraud counts by "granting leave to replead."

tions were made by both Turel and Weinstein up to and including June 4, 1958.[3] However, the papers on the motion clearly indicate that there is no genuine issue of defendant Turel's having made any representation after, at the very latest, December 1955.[4] Accordingly, the motion for summary judgment of Turel and Wickersham is granted as to the first two causes of action.

■ The New York law may admittedly work harsh results;[5] but in the exercise of diversity jurisdiction, this Court must follow it.[6] Attempts have been made to change the law by statute, most recently by a bill introduced in the 1962 session of the New York State Legislature upon the recommendation of the New York State Law Revision Commission. The Commission's Report stated that

" * * * the injustice of the rule under which the statute of limitations is computed from the time of the malpractice, without regard to

time of discovery, can be corrected without extending indefinitely the time of the physician's potential liability, by providing that the cause of action, whether based on tort, contract or any other theory, is deemed to have accrued upon discovery, subject to a further provision that this shall not permit commencement of the action after six years from the occurrence of the malpractice." [7]

However, the statute was not enacted and the law in New York remains as described above.[8]

■ With regard to the third cause of action which seeks damages for breach of contract only, the New York law is less clear. However, it appears that the harsh operation of the statute of limitations for malpractice actions has been modified somewhat by decisions allowing a cause of action in contract for breach of a doctor's agreement to achieve a particular result [9] or to use a particular method.[10] Thus, in the Robins case, the New York Court of Appeals refused

---

3. Complaint, paragraph TWENTY-THIRD states that: "Upon information and belief, up to and including the 4th day of June, 1958, each of the individual defendants represented to the plaintiff that his operations was for a post operative hernia and/or abdominal abscess."

4. See pp. 45–47, 49 of the examination before trial of plaintiff, attached to defendants' moving papers.

5. Thus, the Committee on Medical Jurisprudence of the Association of the Bar of the City of New York has stated: "It seems to this Committee that it is a denial of justice to deprive a patient injured through the negligence of his doctor of any remedy where through excusable ignorance he is unaware of the doctor's negligence until after the lapse of two years; and it is especially shocking that the patient can be remediless even though the doctor, who is possessed of superior knowledge of the facts, has willfully concealed such knowledge from the patient." 13 Record of N.Y.C.B.A. 465, 466 (1958).

6. It may be that the law will eventually be changed by the New York Court of Appeals. Thus, in "The Malpractice Statute of Limitations in New York and Other Jurisdictions," 47 Cornell L.Q. 339,

342, Richard B. Lillich points out that "The Court of Appeals, while affirming Appellate Division decisions holding that the malpractice statute begins to run from the date of the negligent act or omission and not the discovery thereof, has always done so without opinion. * * * Thus it has never categorically placed its seal of approval on the above reasoning, although its answer in Conklin to a certified question amounts to at least tacit acquiescence. 254 N.Y. at 621, 173 N.E. at 893. As the trial judge in Dorfman v. Schoenfeld suggests, possibly the Appellate Division and certainly the Court of Appeals may change the present construction of § 50(1)."

7. 1962 Leg.Doc. No. 65(C); reprinted McKinney's Session Law News, 3392, 3393 (1962).

8. In the 1962 New York State Legislative Session, N.Y.C.P.A. § 50 was amended to provide a three-year rather than a two-year statute of limitations on malpractice actions. C.P.L.R. § 214(6), effective September 1, 1963.

9. Robins v. Finestone, 308 N.Y. 543, 127 N.E.2d 330 (1955).

10. Frank v. Maliniak, 232 App.Div. 278, 249 N.Y.S. 514 (1st Dep't 1931).

to dismiss a complaint growing out of a malpractice situation which also stated a cause of action in contract. The Court stated (at 308 N.Y. 546, 127 N.E.2d 330, 331):

"When the complaint is read in its entirety, the conclusion is inescapable that a cause of action for breach of contract is stated. While it may be unusual for a physician to enter into a special contract to cure rather than to undertake only to render his best judgment and skill, since the practice of medicine is not an exact science, it cannot be doubted that there are occasions when such contracts are made. * * * As was recently indicated, a doctor and his patient are at liberty to contract for a particular result and, if that result be not attained, a cause of action for breach of contract results which is entirely separate from one for malpractice although both may arise from the same transaction. ' * * * The damages recoverable in malpractice are for personal injuries, including the pain and suffering which naturally flow from the tortious act. In the contract action they are restricted to the payments made and to the expenditures for nurses and medicines or other damages that flow from the breach thereof', * * *." [quoting from Colvin v. Smith, 276 App.Div. 9, 92 N.Y.S. 2d 794, 795 (3d Dep't 1949)]

See also Hammer v. Rosen, 7 N.Y.2d 376, 198 N.Y.S.2d 65, 165 N.E.2d 756 (1960), indicating that the trial court there dismissed causes of action for malpractice and fraud but allowed the contract action to go to the jury.

Plaintiff's claim against Turel, therefore, could possibly come within the ambit of these decisions, although it is not clear from the complaint that it does. In any event, on the state of the record before me, it would seem inappropriate to deny plaintiff his day in court on this cause of action even though it may be "difficult to establish." See Report of the Law Revision Commission cited supra, note 7; p. 3393. Accordingly, the motion for summary judgment as to the third cause of action is now denied, but plaintiff is directed to file, within sixty days from entry of an order hereon, an amended complaint more clearly alleging the nature of the contract relied upon and whether Wickersham was a party thereto.[11] Thereafter, defendants may, if they so desire, renew their objection to the third cause of action.

Settle order on notice.

---

11. Katz v. Manhattan General, Inc., 1 A.D. 2d 134, 148 N.Y.S.2d 155 (1st Dep't 1956) aff'd mem., 3 N.Y.2d 840, 166 N.Y. S.2d 80 (1957). See Wolff v. Jamaica Hosp., 11 A.D.2d 801, 205 N.Y.S.2d 152 (2d Dep't 1960); Gautieri v. New Rochelle Hosp. Ass'n, 4 A.D.2d 874, 166 N.Y.S.2d 934 (2d Dep't 1957), aff'd 5 N.Y.2d 952, 183 N.Y.S.2d 803 (1959).