Hazel F. LAUGHLIN, Appellant,

v.

Paul FORGRAVE and John Forgrave, Respondents.

No. 52919.

Supreme Court of Missouri,
En Banc.

Sept. 9, 1968.

Rehearing Denied Oct. 14, 1968.

Ben W. Swofford, Kansas City, Maurice Pope, St. Joseph, Michael F. Morrissey, Denver, Colo., for appellant; Swofford & Waisblum, Kansas City, Morrissey & Morrissey, Denver, Colo., of counsel.

Joseph M. Garvey, St. Joseph, Clem W. Fairchild, Herbert M. Kohn, Kansas City, for respondents; Linde, Thomson, Van-

Dyke, Fairchild & Langworthy, Kansas City, of counsel.

HENLEY, Judge.

Action for damages for malpractice against two medical doctors. Verdict and judgment were for plaintiff for $16,000. The court sustained defendants' after-trial motion for judgment in accordance with their motion for directed verdict, set aside the verdict and judgment, and entered judgment for defendants. Plaintiff appeals. We affirm.

The issue presented on appeal is whether this action is barred by the two year statute of limitation, § 516.140.[1] Involved in that issue is the question: when does the statute of limitation begin to run in malpractice actions? Does it begin to run on "* * * the date of the act of neglect, complained of * * *"? Or, does it begin to run on the date "* * * when the damage resulting [from the wrong done] is sustained and is capable of ascertainment * * *", or, in simpler words, when the damage is discoverable by the injured party?

Section 516.140 provides that actions against physicians, surgeons, and others, for damages for malpractice "* * * shall be brought within two years from the *date of the act of neglect* complained of * * *." (Emphasis supplied.) Section 516.100, applying to civil actions other than those for the recovery of real property, provides that such actions "* * * can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall *not* be deemed to accrue *when the wrong is done* * * *, *but when the damage resulting therefrom is sustained and is capable of ascertainment* * * *." (Emphasis supplied.)

Defendants contend that this action is barred by § 516.140, because the action, filed September 24, 1963, was not brought within two years after June, 1951, the date of the act of neglect of which plaintiff complains. Plaintiff contends the action is not barred, because the running of the two year period was tolled by § 516.100, since the damage resulting from the wrong done (act of neglect) was not discoverable until September, 1962, and the action was filed within two years after that date.

The court reporter died before the evidence and trial proceedings could be transcribed. The parties, with the approval of the trial judge, stipulated as to the facts presented to and proceedings had before the jury and thus presented the record to this court in a transcript on appeal. Briefly, this record shows that defendants performed surgery on plaintiff at Missouri Methodist Hospital in St. Joseph, Missouri, on June 4, 1951, and that she continued as their patient until June 15, 1951; that the surgery consisted of a bilateral salpingectomy, appendectomy, Gillian-Grosson uterus and excision of a lipoma (fatty tumor) in her lower back; that defendants left a foreign body, a rubber dam, in the L5–S1 post sacral area of her back. Thereafter plaintiff occasionally suffered mild pain and discomfort in her lower back, and from June 15, 1951, to October 17, 1960, she was, from time to time, under the care of four other doctors who administered conservative treatment to her back. In October, 1960, she fell in a seated position in Colorado and experienced severe pain in her lower back, resulting in marked disability. From October, 1960, to September, 1962, she was treated for pain in her back by three other doctors at different times; although X rays were taken and thorough examinations made, none of these doctors discovered the presence of this foreign body in her back. In September, 1962, she was hospitalized in Denver, Colorado, by still another doctor and a myelogram performed;

---

1. All section references are to Revised Statutes of Missouri, 1959, and V.A.M.S., except where otherwise indicated.

it revealed a small filling defect in the L5–S1 area. On September 5 a lumbar laminectomy was performed during which the rubber dam left in plaintiff's body at the June, 1951, operation was discovered and removed. Prior to the September 5, 1962, operation plaintiff had no surgical openings in this area of her back, except the surgery performed by defendants on June 4, 1951.

We have read the Missouri cases cited by the parties, and other decisions of the courts of this state; none provide answers to the questions presented in this case. We have also read the cases from other jurisdictions and other authorities cited by the parties in which this question was involved. While those cases are interesting they are not particularly persuasive, because in general, they involved statutes using language different from ours. We simply (and respectfully) do not agree with the reasoning adopted in some. Those interested in the authorities primarily relied on by the parties

will find them in footnotes 2 [2] and 3.[3] The issue and questions presented involve interpretation of §§ 516.100 and 516.140. We look to the history of those sections for any light it may shed on legislative intent.

Our statutes of limitations had their beginning July 4, 1807. See: 1 Territorial Laws, Chapter 42, p. 144.[4] The first enactment of a part of what is now § 516.100 appears in Laws of Missouri, 1849, Article II, § 2. In 1857, the Nineteenth General Assembly reenacted the limitations Article. Laws of Missouri, 1856–57, p. 77. Section 1, Article II of that reenactment reads:

"Civil actions can only be commenced within the periods prescribed in the sections which follow, after the causes of action shall have accrued."

The language quoted above remained substantially the same through subsequent revisions [5] until 1919. In that year the Fiftieth General Assembly amended § 1887, RSMo 1909, with an emergency clause,[6]

2. For the cases cited by plaintiff, see: Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, 253 S.W.2d 832; State ex rel. Stern Bros. & Co. v. Stilley, Mo., 337 S.W.2d 934; City of St. Louis v. Carpenter, Mo., 341 S.W.2d 786, 87 A.L.R.2d 1219; Sabine v. Leonard, Mo., 322 S.W.2d 831; Lewis v. Thompson, 231 Mo.App. 321, 96 S.W.2d 938; Krug v. Sterling Drug, Inc., Mo., 416 S.W.2d 143; Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, 11 A.L.R.2d 252; Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277; Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788; Morrison v. Acton, 68 Ariz. 27, 198 P.2d 590; Crossett Health Center v. Croswell, 221 Ark. 874, 256 S.W.2d 548; Burton v. Tribble, 189 Ark. 58, 70 S.W.2d 503; Costa v. Regents of University of California, 116 Cal.App.2d 445, 254 P.2d 85; Telaneus v. Simpson, 321 Mo. 724, 12 S.W.2d 920.

3. For the cases and authority cited by defendants, see: Thatcher v. DeTar, 351 Mo. 603, 173 S.W.2d 760; Woodruff v. Shores, 354 Mo. 742, 190 S.W.2d 994, 166 A.L.R. 957; National Credit Associates, Inc. v. Tinker, Mo.App., 401 S.W.2d 954; Cappuci v. Barone, 266 Mass. 578, 165 N.E. 653; Tessier v. United States, 1 Cir., 269 F.2d 305; Baum v. Turel, D.C.,

206 F.Supp. 490; Brown v. Westport Finance Co., D.C., 145 F.Supp. 265; De Long v. Campbell (1952), 157 Ohio St. 22, 104 N.E.2d 177; Annotation, 80 A.L. R.2d 368; Trial of Medical Malpractice Cases, sec. 1306, Louisell and Williams.

4. For a recent interesting article on our statutes of limitations, see: 33 Missouri Law Review 171, "Tort Liability and the Statutes of Limitation." (Spring 1968— by Frederick Davis.)

5. General Statutes of Missouri, 1865, Chapter 191, § 8, p. 746; RSMo 1889, § 6773; RSMo 1899, § 4271; RSMo 1909, § 1887.

6. Interestingly, the emergency clause (Sec. 2, Committee Substitute for S.B. 69; Laws of 1919, pp. 211–212) states: "There being some difference of judicial opinion as to the construction of the present law, an emergency exists * * *." This statement of reason for the declaration of emergency aroused our curiosity and led us down another road. For those interested in the "difference of judicial opinion" existing at that time see: Stark Bros. Co. v. Gooding, 175 Mo.App. 353, 162 S.W. 333 (1914); Boyd v. Buchanan, 176 Mo.App. 56, 162 S.W. 1075 (1914); and Roberts v. Neale, 134 Mo.App. 612, 114 S.W. 1120 (1909). For a later deci-

by adding a proviso in virtually the same language as that now found in § 516.100. The language of the statute, with the proviso added, remained substantially the same through subsequent revisions, including the 1959 revision.[7]

A part of what is now § 516.140 also had its beginning in 1807. See: 1 Territorial Laws, p. 144. An 1825 Act (Laws of Missouri, 1825) provided: "And all actions on the case for words * * * shall be brought within one year next after the cause of such actions shall have accrued * * *", and actions for assault, battery and false imprisonment within two years. Section 6, Article II of an 1849 Act (Laws of Missouri, 1848–49, pp. 74–75) fixed a two year limitation on " * * * an action for libel, slander, assault, battery, or false imprisonment * * *", and actions for medical malpractice were covered by the general language of the fifth clause of § 4 of that Article providing a five year limitation. The separate limitation periods for actions for assault, battery, etc., and those for medical malpractice remained the same through subsequent enactments and revisions until 1921.[8] In the 1919 revision, section 1319 read: "Within two years: An action for libel, slander, assault, battery, false imprisonment or criminal conversation." In 1921, the Fifty-first General Assembly by an Act (Laws of Missouri, 1921, pp. 197–198; Senate Bill 335) amended § 1319 by adding a new section, § 1319a, which reads:

"All actions against physicians, surgeons, dentists, roentgenologists, nurses, hospitals and sanitoriums for damages for malpractice, error, or mistake shall be brought within *two* years from the date of the act

of neglect complained of." (Emphasis supplied.)

In the 1929 revision the two year malpractice limitation (§ 1319a, Laws of Mo., 1921) was combined with the two year libel, etc., limitation (§ 1319) in § 864, (RSMo 1929, § 864), the malpractice limitation being the second sentence in the latter section; the language of § 864 remained the same in the 1939 revision (§ 1016, RSMo 1939). In 1945 the General Assembly by an Act (Laws of Missouri, 1945; House Bill 500) repealed and reenacted § 1016, adding the following words to the second sentence of that section: " * * * and an action by an employee for the payment of unpaid minimum wages * * * shall be brought within two years *after the cause accrued*." (Emphasis supplied.) The language of our present § 516.140 is exactly the same as § 1016 (RSMo 1939) after reenactment of § 1016 in 1945.[9]

The significance of this legislative history, particularly that beginning with the year 1921, is that it shows clearly a legislative intent to treat particularly with medical malpractice actions and fix a specific date when the statute of limitation shall begin to run against those actions, a date different from the date and time when the statute begins to run against other actions covered by what is now § 516.140. Prior to 1921 the limitation period for malpractice actions was five years and prior to 1919, when the General Assembly amended § 1887, RSMo 1909, the limitation period commenced to run on the date the cause of action accrued. When the proviso was added by amendment of § 1887 by the Fiftieth General Assembly in 1919 [10] the statute of limitation (the five-year statute) in malpractice ac-

sion which indirectly led us to the cases cited in this footnote, see: Sabine v. Leonard, Mo., 322 S.W.2d 831, 837 [3–4], and the dissenting opinion at l.c. 839.

7. RSMo 1919, § 1315; RSMo 1929, § 860; RSMo 1939, § 1012; RSMo 1949, § 516.-100.

8. General Statutes of Missouri, 1865, Chapter 191, §§ 10 and 12, p. 747; RSMo

1889, §§ 6775 and 6777; RSMo 1899, §§ 4273 and 4275; RSMo 1909, §§ 1889 and 1891; RSMo 1919, §§ 1317 and 1319.

9. The language was the same in the 1949 revision, § 516.140, RSMo 1949.

10. Laws of Missouri, 1919, pp. 211–212, with the unusual emergency section noted above, defining when a cause of action shall be deemed to accrue.

tions commenced to run on the same date as actions for libel, slander, assault, etc., that is, not "* * * when the wrong is done * * * but when the damage resulting therefrom is sustained and is capable of ascertainment * * *." [11] However, significantly, two years later, in 1921, the next General Assembly, the Fifty-first, with knowledge fresh in its mind of what had been done at the previous session to define by the proviso specifically when a cause of action shall be deemed to accrue and the meaningful effect of that proviso upon malpractice actions, amended § 1319 by adding § 1319a to provide that such actions "* * * shall be brought within two years from the *date of the act of neglect* complained of." (Emphasis supplied.) The result was that beginning with the revision of 1929, when §§ 1319 and 1319a (RS Mo 1919) were combined and became § 864, RSMo 1929, we had two types of action in one section, one of which (libel, assault, etc.) did not have attached to it its own specific date from which the limitation period commenced to run and one (malpractice) which did. As stated, this section remained the same through the 1939 revision (§ 1016, RSMo 1939) until 1945. Again, significantly, and indicative of its intent to treat malpractice actions differently from other actions so far as the date of commencement of the running of the statute is concerned, the General Assembly, in 1945, repealed and reenacted § 1016 by adding another type of action, those by employees for the payment of unpaid minimum wages, etc., and provided that such actions shall be brought within two years *after the cause accrued*, but left intact and unchanged the provision that malpractice actions shall be brought within two years from the date of the act of neglect.

■ The rule is: "'Where there is one statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but to the extent of any necessary repugnancy between them the special will prevail over the general statute. Where the special statute is later, it will be regarded as an exception to, or qualification of, the prior general one * * *.'" State ex rel. McKittrick v. Carolene Products Co., 346 Mo. 1049, 144 S.W.2d 153, 156 [5]; 50 Am.Jur., Statutes, § 367, p. 371.

■ These two sections cannot be harmonized, because they are in irreconcilable conflict; in conflict in that the general statute, § 516.100, as applied to malpractice actions, would dictate that the two year statute does not commence to run when the *wrong* is done, whereas the special statute, § 516.140, says that the limitation period commences to run when the *act of neglect* occurs. To the extent of this conflict the special statute prevails over the general. Also, the special statute is the later of the two and is regarded as an exception to, or qualification of, the prior general one.

It is quite clear to us that the General Assembly deliberately used, and continued to use, the words, "from the date of the act of neglect," as an expression of purpose to build into that part of § 516.140 applicable specifically to medical malpractice actions a special provision as to the date from which the limitation period pertaining to those actions commences to run, independent of, and as an exception to, the provisions of § 516.100.

■ We hold that the limitation period commenced to run against this action in June, 1951; that the two year statute was not tolled by § 516.100; that, therefore, the action is barred by § 516.140.

■ Plaintiff insists in argument that the statute of limitation should not com-

11. This section (§ 1887), as amended became § 1317, RSMo 1919; now § 516.100.

mence to run until discovery of the malpractice by plaintiff; that any other result is harsh and that should we affirm the judgment of the trial court " * * * a monumental injustice will be written into our law." It is obvious that plaintiff did not know and could not have known of the cause of her injury and damage or that she had a cause of action against defendants before September, 1962; she certainly could not have discovered the cause of her pain and the damage she sustained when seven doctors did not. This argument is appealing and has some force, so far as justice is concerned; in that respect the conclusion we reach is distasteful to us. But, the legislative branch of the government has determined the policy of the state and clearly fixed the time when the limitation period begins to run against actions for malpractice. This argument addressed to the court properly should be addressed to the General Assembly. Our function is to interpret the law; it is not to disregard the law as written by the General Assembly.

Inasmuch as plaintiff's reliance is solely on § 516.100, we do not consider whether other sections of Chapter 516 may affect the time for filing medical malpractice actions, particularly § 516.280.

The second point briefed by plaintiff attempts to raise constitutional issues. The point is: "If the court adopts the theory of the trial court and affirms its judgment, section 516.140 * * * is unconstitutional and void as depriving * * * plaintiff of valuable property rights without due process of law, depriving her of equal protection of the law and as constituting class legislation, all in violation of both the state and federal constitutions." Those parts of the state and federal constitutions which plaintiff says § 516.140 would violate if the judgment should be affirmed are the due process clause of the Fourteenth Amendment to the Constitution of the United States and §§ 2, 10 and 14 of Article I, and subsections (6), (28) and (30) of § 40 of Article III, Constitution of Missouri, V.A. M.S. There may be some question whether the constitutional issues, thus asserted, were timely and properly raised, but we pass that question to approach and decide these issues on their merits.

■ The legislative branch of the government has the power to enact statutes of limitations and inherent in that power is the power to fix the date when the statute commences to run. Statutes of limitations are favorites of the law and will not be held unconstitutional as denying due process unless the time allowed for commencement of the action and the date fixed when the statute commences to run are clearly and plainly unreasonable. Faris v. Moore, 256 Mo. 123, 165 S.W. 311, 314 [6, 7]; State ex rel. Bier v. Bigger, 352 Mo. 502, 178 S.W. 2d 347, 350 [3]. Plaintiff has not demonstrated, and we perceive no reason why, how or in what respect the date and time fixed by the statute are unreasonable. We hold that it fixes a reasonable date from which the statute commences to run and accords and limits a reasonable time thereafter within which malpractice actions may be brought; that for these reasons the statute does not deprive plaintiff of due process of law.

Plaintiff's contentions that the statute, as construed, deprives her of equal protection of the law and is class legislation violating her constitutional rights are closely allied.

■ As a general rule, the date when a limitation period begins to run and the time thereafter within which a particular class of action shall be commenced against a particular class of persons, may be fixed by statute by the legislature and does not amount to a denial of equal protection or constitute proscribed class legislation, provided the classifications are reasonable, are not discriminatory, and apply to and affect alike all persons and actions within those classes. Plaintiff has not demonstrated

why, how or in what respect this statute is unreasonable or discriminatory, or wherein it does not apply to and affect alike all medical malpractice actions brought by any and all persons against doctors and others within the class of persons designated by the statute. We find no sound reason for plaintiff's contentions.

The judgment is affirmed.

FINCH, EAGER and STORCKMAN, JJ., concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

HOLMAN, C. J., and SEILER, J., dissent and concur in separate dissenting opinion of DONNELLY, J.

## DISSENTING OPINION

DONNELLY, Judge.

In Foremost Dairies, Inc., v. Thomason, Mo.Sup., 384 S.W.2d 651, at 659, this Court stated: " * * * Where the meaning of a statute is clear there is no occasion for its construction and the courts will apply it as written. However, when the meaning is doubtful it becomes the duty of the courts to construe it. It is elementary that the primary rule to be applied in the construction of a statute is to ascertain and give effect to the legislative intent. * *"

I believe that §§ 516.140 and 516.100 are in "pari materia," and that we should apply a rule of statutory construction which "proceeds upon the supposition * * * [that these statutes] were governed by one spirit and policy and were intended to be consistent and harmonious in their several parts and provisions * * *." State ex rel. Cairo Bridge Commission v. Mitchell,

352 Mo. 1136, 1143, 181 S.W.2d 496, 499; State ex rel. Smithco Transport Co. v. Public Service Commission, Mo.Sup., 316 S.W.2d 6, 12–13; City of St. Louis v. Carpenter, Mo.Sup., 341 S.W.2d 786, 788–789, 87 A.L.R.2d 1219.

I would follow said rule of construction and would conclude that the General Assembly intended that a malpractice case must be filed within two years "from the date of the act of neglect complained of" (§ 516.-140) *when, but only when,* the damage resulting therefrom is sustained and is capable of ascertainment (§ 516.100), *on the date of the act of neglect.* If, as in this case, the damage is not capable of ascertainment on the date of the act of neglect, the malpractice case must be filed within two years from the date the damage resulting therefrom is sustained and is capable of ascertainment.

Of course, this Court must apply a statute as written when its meaning is clear. Foremost Dairies, Inc. v. Thomason, supra. However, when, as here, a statute is unclear and it becomes our duty to judicially ascertain the legislative intent, we can, and must, assume the General Assembly intended a just result. Laclede Gas Company v. City of St. Louis, 363 Mo. 842, 848, 253 S.W.2d 832, 835; Maryland Casualty Company v. General Electric Company, Mo.Sup., 418 S.W.2d 115, 118.

As stated in the principal opinion, it "is obvious that plaintiff did not know and could not have known of the cause of her injury and damage or that she had a cause of action against defendants before September, 1962; she certainly could not have discovered the cause of her pain and the damage she sustained when seven doctors did not." I would hold that plaintiff is entitled to her day in court under these circumstances.

I respectfully dissent.