Virginia MILLER, Richard Miller, Deitria Miller, Sabrina Miller, Donyell Miller, Dena Miller and Dawon Miller, Plaintiffs-Appellants,

v.

Fred DUHART, D.O., Alan S. Palmer, D.O. and Normandy Osteopathic Hospital, Defendants-Respondents.

No. 44471.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 1, 1982.

Motion for Rehearing and/or Transfer Denied July 16, 1982.

Application to Transfer Denied Sept. 13, 1982.

Susan M. Hais, Clayton, for plaintiffs-appellants.

John J. Horgan, St. Louis, for DuHart.

George L. Fitzsimmons, Anthony R. Behr, Clayton, for Palmer.

Sanford Goffstein, Don R. Sherman, Clayton, for Normandy.

SNYDER, Judge.

This is an action in which the plaintiffs seek damages for the "wrongful life" or "wrongful birth" of a child born after the allegedly negligent performance of a bilateral tubal ligation. The Circuit Court of St. Louis County sustained the defendants' motion to dismiss, ruling that the action was barred by the two-year statute of limitations, § 516.105 R.S.Mo.1978.[1] The plaintiffs appealed. The judgment is affirmed.

Appellant Virginia Miller, upon the birth of her fourth child, decided she wanted no more children. Respondents Alan S. Palmer, D.O. and Fred DuHart, D.O. were retained to perform a bilateral tubal ligation. The procedure was performed August 25, 1976 at Normandy Osteopathic Hospital. On February 21, 1980, Mrs. Miller's fifth child, Dawon, was born. Prior to the birth of the child, the Millers had no indication that the sterilization operation was ineffective.

Mrs. Miller and her husband, Richard, brought this action against Alan S. Palmer, D.O., Fred DuHart, D.O. and Normandy Osteopathic hospital alleging damages for lost wages, the expense of raising the unplanned child and special expenses. In addition, Mr. Miller claims damages for loss of consortium.

The Miller children sought damages for the loss of their mother's and father's society, care, comfort and protection, as well as the loss of financial support resulting from the birth of the additional sibling, who was also named as plaintiff.

1. All statutory references are to R.S.Mo.1978.

The lower court concluded that the cause of action fell under § 516.105 which provides:

"All actions against physicians, hospitals, dentists, registered or licensed practical nurses, optometrists, pediatrists, pharmacists, chiropractors, professional physical therapists, and any other entity providing health care services and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error or mistake related to healthcare shall be brought within two years from the date of the occurrence of the act of neglect complained of, except that a minor under the full age of ten years shall have until his twelfth birthday to bring action and except that in cases in which the act of neglect complained of is introducing and negligently permitting foreign object to remain within the body of a living person, the action shall be brought within two years from the date of discovery of such alleged negligence, or from the date on which the patient in the exercise of ordinary care should have discovered such alleged negligence, whichever date first occurs, but in no event shall any action for damages for malpractice, error, or mistake be commenced after the expiration of ten years from the date of the act of neglect complained of."

The "act of neglect complained of" was determined to be the performance of the tubal ligation, which "occurred" on August 25, 1976. Plaintiffs filed this action January 16, 1981, more than four years after the operation was performed. The lower court granted the defendants' motions to dismiss, holding the action barred by the two-year limitations period set forth in § 516.105.

The plaintiffs appeal on three points. First, they argue that the children's cause of action was not barred by § 516.105 because all of the Miller children were under the age of ten and had until age twelve to maintain a cause of action. Second, appellants assert that this "wrongful birth" action falls under the general tort statute, § 516.100 which provides that the statute of limitations begins to run from the time the injury is capable of ascertainment, rather than from the time the negligent act occurred. Third, the appellants claim that even if this court determines that the causes of action fall under the malpractice statute, § 516.105, the mother and child continued treatment pursuant to the child's birth, thereby tolling the statute.

Section 516.105 requires that this action be brought within two years from the date of the occurrence of the act of neglect complained of "except that a minor under the full age of ten years shall have until his twelfth birthday to bring action ...." The language of the statute is clear. If the Miller children have a legally cognizable cause of action, they are not barred from bringing it under the statute of limitations which applies to malpractice actions.

Neither Dawon Miller, whose birth gave rise to these causes of action, nor the other Miller siblings, have a legally cognizable cause of action. Therefore, the judgment of the trial court dismissing the counts of plaintiffs' petition seeking damages for the children must be affirmed.

■ Appellant Dawon Miller, the child born after the unsuccessful sterilization operation, claims damages for injuries resulting from negligent acts occurring prior to his conception: the allegedly negligent performance of the sterilization procedure. In appellant's brief, this is termed a "wrongful life" tort. It is claimed that absent the negligence of the defendant, Dawon Miller would not have been born. See, Note, In Determining Liability for "Wrongful Life": Curlender v. Bio-Science Laboratories—A Step in the Right Direction? 17 New Eng. L.Rev. 213 n. 1 (1981). In contrast to ordinary prenatal tort cases, where the defendant's negligence results in some form of birth defect, the appellant makes no such claim. The injury he alleges is his birth. In effect, the child is claiming that he would be better off unborn. Note, Wrongful Conception as a Cause of Action and Damages Recoverable, 44 Mo.L.Rev. 589, 590 n. 5 (1979). See also, Annotation, 83 A.L.R.3d 15, 19 n. 3 (1978).

The United States Court of Appeals for the Eighth Circuit has recognized the right of a child "in esse" to bring an action for prenatal injuries. In *Bergstreser v. Mitchell*, 577 F.2d 22 (8th Cir. 1978), which appellant cites as supportive of his claim, the plaintiff child claimed damages for injuries resulting from a caesarean section performed before the child was conceived. The mother later became pregnant with the plaintiff child. Several weeks prior to the expected delivery of the child, she suffered an occult rupture of the uterus. It was claimed that the rupture was caused by the allegedly negligently performed caesarean. As a result of the rupture, the mother of the plaintiff had to undergo an emergency caesarean section. During the course of delivery, the plaintiff child suffered a period of hypozia, which resulted in a variety of injuries, including brain damage. The court allowed the child to recover damages for his prenatal injuries, *not* his "wrongful life".

The appellants claim that there would be no tort but for the birth of Dawon Miller. Unlike the plaintiff in *Bergstreser, supra*, Dawon was born normal and healthy. This court is aware of no other court that has extended the prenatal tort concept to cases where the only claimed injury is the birth of the child, and the court will not do so here.

There are several reasons for declining to recognize the wrongful life tort in this case. First, it would be against public policy to recognize a cause of action which would encourage suits by "all others born into the world under conditions they might regard as adverse." *Zepeda v. Zepeda*, 41 Ill. App.2d 240, 190 N.E.2d 849, 858 (1963). To recognize the "wrongful life" tort we would be required to find that a child has a right not to be born. Such a conclusion would require the judiciary to possess the divine ability to determine when a life is wrongful.

"Even as a pure question of law, unencumbered by unresolved issues of fact, the weighing of the validity of a cause of action seeking compensation for the wrongful causation of life itself casts an almost Orwellian shadow, premised as it is upon concepts of genetic predicability once foreign to the evolutionary process. It borders on the absurdly obvious to observe that resolution of this question transcends the mechanical application of legal principles. Any such resolution, whatever it may be, must invariably be colored by notions of public policy, the validity of which remains, as always, a matter upon which reasonable men may disagree."

*Becker v. Schwartz*, 46 N.Y.2d 401, 413 N.Y. S.2d 895, 898, 386 N.E.2d 807, 810 (1978).

Second, it is impossible to ascertain damages for a "wrongful life." This court would be required to compare the condition the appellant Dawon Miller would have been in but for the defendants' alleged negligence, against the claimed impaired condition he is in as a result of the alleged negligence. *Gleitman v. Cosgrove*, 49 N.J. 22, 227 A.2d 689, 692[3] (1967). In effect, the plaintiff would have us measure "the damages for his life against the utter void of nonexistence." *White v. United States*, 510 F.Supp. 146, 148 (D.Kan.1981).

"Simply put, a cause of action brought on behalf of an infant seeking to recover for wrongful life demands a calculation of damages dependent upon a comparison between the Hobson's choice of life in an allegedly impaired state and non-existence. This comparison the law is not equipped to make." *Becker v. Schwartz*, 413 N.Y.S. 2d at 900, 386 N.E.2d at 812.

Third, the appellant child claims an injury "without foundation in law or logic." *Aronoff v. Snider*, 292 So.2d 418, 419 (Fla. App.1974). Despite the label applied by the appellant, the action in this case sounds in negligence or malpractice. "As in any cause of action founded upon negligence, a successful plaintiff must demonstrate the existence of a duty, the breach of which may be considered the proximate cause of the damages suffered by the injured party." 413 N.Y.S.2d at 900, 386 N.E.2d at 812, *citing*, Restatement, Torts, 2d, § 281; Prosser on Torts § 30, (4th ed. 1971).

In the case at bar, in order to rule negligence was properly pleaded on behalf of Dawon, this court would have to find a duty was owed to Dawon and that the breach of that duty was the proximate cause of his birth when both the duty allegedly owed and even the alleged breach arose before Dawon's conception. The court would also have to find that Dawon suffered a legally cognizable injury, that some right possessed by the appellant was invaded. But the appellant has no fundamental right not to be born, nor does he have a right to be born into a family where he was planned or wanted.

Therefore, Dawon Miller's action for wrongful life must be dismissed for failure to state a legally cognizable cause of action.

Appellants Deitria, Sabrina, Donyell and Dena Miller seek damages for the "wrongful birth" of their brother, Dawon. They claim their brother's birth resulted in the loss of some of their mother's society, comfort, care, protection and financial support. Appellants attempt to analogize their loss to the type compensated for under Missouri's wrongful death statute, § 537.080.

■ "Wrongful birth" is a cause of action brought by a member of the "wrongfully born" child's family for damages incident to the pregnancy and birth, and cost of care of the child. See In Determining Liability for "Wrongful Life": Curlender v. Bio-Science Laboratories—A Step in the Right Direction?, 17 New Eng.L.Rev. 213 (1981); Annotation, 83 A.L.R.3d 15, 19.

However, no basis in law exists for an action by siblings for the birth of an additional child to their family. *White v. United States,* 510 F.Supp. 146, 148[3] (D.Kan. 1981). Although children may expect their mother's society, comfort, care, protection and financial support, they have no vested right to a particular share of it. "There is no 'proportional share' of their parents' worldly goods to which the children are entitled and except that the parents are bound to provide for their children and keep them from the public rolls [citation omitted], infants are not entitled as a matter of right to a specific share of their parents'

wealth, much less their 'care', 'affection', or 'training.'". *Cox v. Stretton,* 77 Misc.2d 155, 352 N.Y.S.2d 834, 840 (N.Y.Sup.Ct. 1974).

■ "Wrongful birth" is nothing more than a descriptive label applied to a particular type of malpractice or negligence action. Thus, before damages can be awarded, the siblings are required to demonstrate the existence of a duty, the breach of which may be considered the proximate cause of the injuries claimed. *See,* Restatement (Second) of Torts § 281.

■ It would be ludicrous to find that the defendants owed a duty to the appellant children to prevent the birth of their brother, Dawon, or that the breach of that duty resulted in the loss of their share of their mother's society, comfort, care, protection and financial support. No duty owed them has been breached. No fundamental right has been violated. There is no correlation between the alleged negligence or wrongful act of the defendant and the damages sought by Dawon's siblings. *See, Cox v. Stretton,* 352 N.Y.S.2d at 840.

To support their claim, appellants cite *Custodio v. Bauer,* 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967). That decision, however, did not deal with the question of damages for siblings of the child alleged to be "wrongfully born." It only recognized the possibility that parents may recover for damages suffered by the unwelcome change in family status.

Appellants attempt to analogize their claim to one falling under the wrongful death statute, § 537.080. Under that statute, children may recover for the reasonable value of services, consortium, companionship, comfort, instruction, guidance, counsel and support. Such an argument is without merit. The statute specifically provides redress for wrongful death. No cause of action for wrongful birth may be derived from it. There is no statute relating to wrongful birth or wrongful life and there is no basis in law for recognizing such an action.

The siblings' claim is also dismissed for failure to state a legally cognizable cause of action.

■ The appellants next contend that their cause of action falls under the general tort statute, § 516.100, not the malpractice statute, § 516.105. The limitations period under the general tort statute begins to run from the time the tort is capable of ascertainment, not from the time the act of neglect occurred. Appellants argue that the tort for which they seek damages is not the unsuccessful sterilization operation but the birth of the child, Dawon.

Because this court has already concluded that no cause of action for "wrongful life" exists for Dawon Miller and that his siblings have failed to state a legally cognizable cause of action for "wrongful birth," the court needs only discuss how this argument affects the rights of Virginia and Richard Miller.

■ After a careful reading of the law in this area, this court has concluded that any injury that the parents suffered occurred at the point of conception. Despite the argument of appellant's counsel that there would be no tort "but for the birth of the child," causes of action involving the alleged failure of a surgeon to competently perform a sterilization procedure are more appropriately termed "wrongful conception." See, Note, Wrongful Conception as a Cause of Action and Damages Recoverable, 44 Mo.L.Rev. 589 (1979). Such a term accurately indicates that the defendant's wrongful act was the proximate cause of the conception itself:

> "While other courts have referred to a negligent sterilization case as a 'wrongful birth' action, we believe this type of case is more properly denominated as an action for 'wrongful conception,' for it is at the point of conception that the injury claimed by the parents originates. It should be further emphasized that this cause of action is exclusively that of the parents, since it is they and not the un-

planned child who have sustained both physical and financial injury by the physician's negligence."

*Sherlock v. Stillwater Clinic,* 260 N.W.2d 169, 174–175 (Minn.1977) (footnote omitted).

■ An action for "wrongful conception" has strong support in the law. It is not a new cause of action but merely a descriptive label for a form of malpractice. Malpractice is a statutory cause of action in Missouri. As a form of malpractice, "wrongful conception" gives rise to compensatory damages that are measureable. Such damages might include prenatal and postnatal medical expenses, the mother's pain and suffering during the pregnancy and delivery, loss of consortium, and the cost of a second, corrective sterilization procedure. *Sherlock v. Stillwater Clinic,* 260 N.W.2d at 175; *West v. Underwood,* 132 N.J.L. 325, 40 A.2d 610, 611 (1945). Upon proof of negligence or malpractice, all of these are damages which could be the proximate cause of defendants' breach of duty. However, the award of these damages are subject to the appellant's ability to prove injury. *Sherlock v. Stillwater Clinic, supra.*

■ In recognizing that "wrongful conception" is a form of malpractice, it becomes clear that this claim is governed by the two-year limitations period provided for in § 516.105, not the limitations period set forth in the general tort statute, § 516.100. The bilateral tubal ligation was performed August 25, 1976. This action was filed in the lower court on January 16, 1981. Obviously, this action has not been brought "within two years from the date of the act of neglect complained of" and is barred.

■ However, by attempting to bring this action under the general tort statute, the appellants are, in effect, arguing that the limitations period should not begin to run until the tort is capable of ascertainment. This could be construed as a request to adopt a discovery rule in malpractice actions.[2]

---

**2.** Approximately 13 state courts have adopted a discovery rule in cases involving sterilization procedures. *See* Annotation, 93 A.L.R.3d 218, (1979). About 22 state courts have adopted

In *Laughlin v. Forgrave*, 432 S.W.2d 308, 314 (Mo. banc 1968), the Supreme Court of Missouri was faced with a request to adopt a discovery rule in cases where foreign objects were left within a patient after surgery. At that time, the court responded: "It is obvious that plaintiff did not know and could not have known of the cause of her injury and damage or that she had a cause of action against the defendant before September, 1962; she certainly could not have discovered the cause of her pain and the damage she sustained when seven doctors did not. This argument is appealing and has some force, so far as justice is concerned; in that respect the conclusion we reach is distasteful to us. But the legislative branch of the government has determined the policy of the state and clearly fixed the time when the limitations period begins to run against actions for malpractice. This argument addressed to the court properly should be addressed to the General Assembly. Our function is to interpret the law; it is not to disregard the law as written by the General Assembly."

discovery rules in cases involving foreign objects. *See,* Annotation, 70 A.L.R.3d 7 (1976).

3. In *Layton v. Allen*, the Delaware Supreme Court held that the discovery rule should be applied to foreign objects. "To say that the plaintiff has two years after the 'claimed' injury within which to maintain an action, and, at the same time, to say that the injury must be 'claimed' before she has, or can reasonably be expected to have knowledge of any wrong inflicted upon her, is contrary to reason and justice. It is unreasonable, we think, to assume that the General Assembly intended to grant a remedy for a wrong but to bar the remedy before the wrong was physically ascertainable by due diligence. To ascribe to the General Assembly any such unjust intent ... seems to us completely unreasonable." *Layton v. Allen,* 246 A.2d 794, 797 (Del.1968).

The Delaware court then argued that the adoption of discovery rule was within the judicial function. "The construction of a statute of limitations is not the creation of an exception in violation of the legislative function. It is the well recognized function of the courts to construe statutes of limitations so as to establish just and reasonable guidelines for different classes of cases in the light of the general policy of repose." *Layton v. Allen,* 246 A.2d at 799.

Several states disagree with the result reached in *Laughlin.* Those courts employ a variety of "creative" arguments to justify the adoption of a judge-made discovery rule.

Some courts have argued that the discovery rule must be adopted or else the statute of limitations without such a rule creates unreasonable and absurd results. *E.g., Layton v. Allen,* 246 A.2d 794 (Del. 1968); *Frohs v. Greene,* 253 Or. 1, 452 P.2d 564, 565 (1969).[3]

Other courts rule that a discovery rule is wholly consistent with the basic purpose of the statute of limitations to prevent stale claims. *E.g., Fernandi v. Strully,* 35 N.J. 434, 173 A.2d 277, 286 (1961). Other courts simply find that it is within the province of the judiciary to find a discovery rule when the legislature has been silent on the issue and when the court determines that such a reform is necessary. *Yoshizaki v. Hilo Hospital,* 50 Hawaii 150, 433 P.2d 220, 224 n. 7 (1967); *Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745 (1968).[4]

The Oregon Supreme Court construed their malpractice statute, which contained a foreign object discovery exception similar to the Missouri statute, to include a discovery rule for all cases of malpractice. "On a theoretical basis it is impossible to justify the applicability of the discovery rule to one kind of malpractice and not to another. The reason for the application of the discovery rule is the same in each instance. It is manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has had an opportunity to discover that it exists. This is true whether the malpractice consists of leaving a foreign object in the body or whether it consists of faulty diagnosis or treatment." *Frohs v. Greene,* 452 P.2d 564, 565 (Ore. banc 1969).

4. In *Yoshizaki v. Hilo Hospital,* the Supreme Court of Hawaii commented: "Courts too often overestimate the facility with which the legislative process can deal with reform in the area of tort law [citation omitted]. Where reform is necessary in the area of tort law, the court should act wherever possible and leave to the legislature the question of whether the reform should be modified or rescinded in whole or in part. Judicial action is frequently necessary to overcome legislative inertia." 433 P.2d 220, 224 n. 7 (Hawaii 1967).

The Supreme Court of Rhode Island aired a similar opinion in *Wilkinson v. Harrington,* 243

These arguments are clearly violative of the principles set forth by our Supreme Court in *Laughlin v. Forgrave*, 432 S.W.2d 308 (Mo. banc 1968). The statute is written with clarity and precision, and does not allow this court to assume that legislative intent was to the contrary. However, the legislature is strongly urged to correct the inequity which the present malpractice statute creates in discovery cases other than those concerned with foreign objects. Despite arguments to the contrary, that body is the best forum with which to deal with this problem. Courts should not legislate. Many of the problems in our legal system and indeed in our society as a whole have been caused by judicial activism which creates uncertainty and instability in the law. This court declines to adopt a discovery rule. The point is ruled against appellant.

■ Appellants also contend that this action was wrongfully dismissed by the lower court because the appellant Virginia Miller had continued treatment pursuant to the birth of her son, thereby tolling the statute.

The Supreme Court of Missouri has held that the statute of limitations does not begin to run against a plaintiff until the treatment by the defendant ceases. *Thatcher v. De Tar*, 351 Mo. 603, 173 S.W.2d 760, 762 (1943). That exception applies only "where the treatment is continuing and of such a nature as to charge the medical man with the duty of continuing care and treatment which is essential to recovery." *Thatcher v. De Tar*, 173 S.W.2d at 762. *See, Shaw v. Clough*, 597 S.W.2d 212, 215 (Mo.App.1980).

Appellants allege no facts which point to continuing treatment by the defendants past the date of the first sterilization operation. The fact that the appellant Virginia Miller saw another doctor concerning a related matter several years after the sterilization procedure was performed does not constitute the continued treatment necessary to toll the Missouri statute.

The judgment is affirmed.

REINHARD, P. J., and CRIST, J., concur.

A.2d 745 (R.I.1968). "The realities of the legislative process persuade us that courts should not defer questions to the enacting branch merely because the questions may in some form or another relate to public policy. In a narrow view, hardly a case before the court is devoid of some public policy consideration. . . .

When presented with issues inextricably entwined with abstruse legalistic concepts and complex principles of law affecting the rights and duties of the public, there can be no doubt that the courts are the most suitable and logical forums for their determinations." 243 A.2d at 749.