LEWARSKI, APPELLANT, *v.* COLUMBUS DEVELOPMENTAL CENTER ET AL., APPELLEES.*

(No. 86AP-941 — Decided October 29, 1987.)

*Richard F. Swope,* for appellant. *Anthony J. Celebrezze, Jr.,* at-torney general, and *Mark T. D'Alessandro,* for appellees.

BOWMAN, J. This is an appeal from a judgment of the Court of Claims dismissing appellant's cause of action against appellees for the reason that it is barred by R.C. 2743.16.

Appellant, Edward Lewarski, filed a complaint on March 9, 1984, in the Court of Claims against appellees, Columbus Developmental Center and Ohio Department of Mental Retardation and Developmental Disabilities, which are state agencies. Appellant asserted in his complaint that he had been "psychologically damaged, deprived of his freedom, and education, the right to earn a reasonable income, freedom from shame and ridicule, and has suffered and will continue to suffer severe economic damage" caused by appellees' negligence in diagnosing appellant as feeble-minded, the wrongful incarceration of appellant, the wrongful holding out of appellant as feeble-minded, and the failure to supply appellant with a normal education, proper care, and loving and compassionate custodians. Appellant also contended in the complaint that appellees' actions were willful and wanton. Appellant requested $1,000,000 in damages and later amended the complaint to request damages of $10,000,000.

Appellees filed a motion to dismiss appellant's complaint in which they contended that the statute of limitations had run, pursuant to R.C. 2743.16, which allows a plaintiff to file suit against the state for a maximum of two years after the cause of action accrues. Appellant filed a memorandum contra appellees' motion to dismiss and appellees filed a reply memorandum. On September 18, 1984, the Court of

---

* Reporter's Note: A motion to certify the record to the Supreme Court of Ohio was overruled on February 17, 1988 (case No. 87-2197).

Claims denied appellees' motion to dismiss. Appellees then filed an answer on September 28, 1984, denying appellant's assertions of appellees' alleged negligent, willful and wanton acts. Appellees also asserted the defense again in their answer that appellant's action was barred by the statute of limitations.

A trial was held in the Court of Claims on July 21, 1986. Only the appellant testified; however, a videotape deposition of Dr. Michael Leach, a psychologist who had tested appellant, was played. Appellant's court, institutional, social service, and medical records were also entered into evidence. After the hearing, on September 11, 1986, the Court of Claims judge dismissed appellant's case, finding that appellant's cause of action accrued "substantially more than two years prior to the date of the filing of this action on March 9, 1984"; therefore, the cause of action was barred by the statute of limitations provisions contained in R.C. Chapter 2743 and 2305.16. Appellant has now appealed the Court of Claims decision.

Appellant asserts the following assignments of error:

"1. The Trial Court erred in dismissing the action on the ground that the action was time-barred because the plaintiff had been legally restored to competency in accordance with the law.

"2. The Trial Court erred in dismissing the cause of action based on the ground the cause of action accrued more than two years following the accrual of the cause of action in that the discovery rule or tolling of the statute was not applicable on the facts presented."

Appellant was committed to the Columbus State School (now appellee, Columbus Developmental Center) on August 31, 1959, by the Cuyahoga County Probate Court when appellant's mother filed an affidavit in that court stating that appellant was "feeble-minded." Appellant was born on June 13, 1951, with deformities which included a nose deviated to the right, upper and lower lip attached to the jawbones by a thin web, a cleft lower jaw, fingers on both hands webbed, congenital deformity of the right eye, and a missing tear duct. The record shows that appellant's parents were unable to cope with appellant's problems, and that therefore, appellant was placed in a foster home from birth. In August 1959, the group home where appellant, then age eight, had been living was closed and the Cuyahoga County Division of Child Welfare discussed with appellant's mother the commitment of appellant to the Columbus State School, since there were no interested foster parents.

Because of his congenital malformations, the record indicates that appellant did not speak until he was five. He received intelligence quotient ("I.Q.") and psychological testing several times beginning in 1957. In 1957, testing indicated that his I.Q. was approximately forty-nine and in 1958, testing indicated his I.Q. was sixty-three. In 1959, after being committed to the Columbus State School, testing of appellant indicated an I.Q. of seventy-one. The 1959 psychological summary for appellant stated that "[a]lthough there are no indications in the present tests of the presence of a better than borderline potential, if he should maintain his present rate of mental growth, then he will eventually function within the normal range." Nevertheless, appellant was not tested again for nine years until 1968 when, at the age of seventeen, he tested as average intelligence with a full scale I.Q. of ninety-one. The psychologist examining him suggested vocational and adult education classes for appellant.

In 1969, the social service records show that social workers urged appellant to enroll in vocational training, but that appellant refused to attend these programs. In 1970, testing indicated that appellant's full scale I.Q. was ninety-five.

Appellant had continually lived in foster homes after being committed to the Columbus State School and had periodically been enrolled in special education classes in regular schools. The record shows that appellant became interested in his past in his teenage years after overhearing a telephone conversation between one of his foster mothers and his natural mother. His then foster mother allowed appellant to travel by bus to Cleveland to review the probate files regarding his commitment.

Appellant also began to show his independence by working and delivering papers for the Columbus Dispatch in 1970. In June 1971, he obtained social security disability benefits. After getting a driver's license, he went to work for a local radio and television station in 1981 as a mail deliverer and driver.

From 1968 to 1970, the social service reports indicate that appellant showed increasing animosity toward appellees and social workers assigned to him. However, in 1970, appellant began to have a good working relationship with social worker Kathie Culbertson. The social service reports show that appellant worked with her to try to secure his discharge from appellee, now the Columbus Developmental Center, and to obtain a court adjudication of his competency. She also encouraged appellant to obtain his high school equivalency, which he did eventually obtain in 1984.

Culbertson's social service reports for 1970 to 1971 and appellant's testimony show that appellant was working with a Cleveland legal aid attorney during this time to achieve a discharge from appellee Columbus Developmental Center and a court adjudication of his competency. On September 13, 1971, appellee did discharge appellant. On September 22, 1971, the Cuyahoga County Probate Court, having received a copy of appellant's discharge, filed an "Order of Discharge and Restoration of Competency" regarding appellant "in accordance with Section 5122.36 of the Revised General Code."

In 1973, appellant had American Civil Liberties Union attorneys file a motion to expunge the Cuyahoga County probate records of appellant's incompetency. Appellant testified that this motion was denied. Then again in 1983, American Civil Liberties Union attorneys, at appellant's request, filed another motion for expungement of these records and appellant stated at trial that he was told this motion was granted, although he said he did not receive a copy of the decision and no records of this expungement were submitted at trial.

Appellant contended at trial that appellees were, at a minimum, negligent in diagnosing him as feebleminded. He also contended that he did not know of appellees' alleged negligence until late 1982 when psychologist Dr. Michael Leach told him that he had never been feebleminded, and that appellees had inaccurately tested and labeled him feebleminded.

Both parties agree that the statute of limitations in R.C. 2743.16 applies in this case because appellant's cause of action is against the state. R.C. 2743.16 states:

"Civil actions against the state * * * shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties.

The period of limitations shall be tolled pursuant to section 2305.16 of the Revised Code * * *.''

Appellant asserts in his first assignment of error that the Court of Claims erred in finding that appellant had been legally restored to competency in 1972 and erred in finding that this competency restoration caused the two-year statute of limitations to begin to run. R.C. 2305.16 tolls the running of the statute of limitations in R.C. 2743.16 when a person entitled to bring an action is "of unsound mind" until after such time as the disability is removed. R.C. 1.02(C) defines "of unsound mind" to include "* * * all forms of mental retardation or derangement." Thus, appellant argues, the statute of limitations for appellant's cause of action against appellees would have been tolled for any periods during which appellant was "feeble-minded" or otherwise of unsound mind.

The Court of Claims found that the Cuyahoga County Probate Court had issued a restoration of competency order regarding appellant on September 22, 1971. However, the Court of Claims did not, as appellant asserts, hold that the date of this order is when appellant's cause of action accrued and the statute of limitations began to run. The Court of Claims held in its decision that appellant's "cause of action accrued substantially more than two years prior to the date of the filing" of the action. The Court of Claims judge listed the 1971 competency restoration order along with several other facts to indicate that appellant knew or should have known before 1982 that he had a cause of action against appellees.

In the first assignment of error, appellant also claims that the 1971 competency restoration order is invalid, allegedly because no hearing was held and, therefore, appellant asserts that he is still incompetent under the law. Appellant asserts that the statute of limitations is tolled while appellant is *legally* incompetent. The 1971 Cuyahoga County Probate Court "Order of Discharge and Restoration of Competency" states that "[t]he Court having before it the report of Columbus State Institute discharging Eddie Lewarski * * * said Eddie Lewarski is restored to competency in accordance with Section 5122.36 of the Revised General Code."

In 1971, R.C. 5122.36 (130 Ohio Laws 1200) provided that:

"Indeterminate hospitalization pursuant to section 5122.15 of the Revised Code, is an adjudication of legal incompetency. * * *
"* * *
"Upon the discharge of a patient under section 5122.21 of the Revised Code, the probate court *shall forthwith* enter its order upon its journal restoring said applicant to competency. * * *" (Emphasis added.)

In 1959, when appellant was committed to the Columbus State School, R.C. 5122.15 was not yet enacted. Appellant was committed under a predecessor statute to R.C. 5122.15.[1] However, it is apparent from the evidence submitted at the Court of Claims trial that appellant was committed pursuant to "indeterminate hospitalization." The Cuyahoga County Probate Court's 1959 journal entry regarding appellant is entitled "Order of Commitment to Columbus State School" and states, "[i]t is further ordered that Eddie Lewarski be committed to the Columbus State School at Columbus, Ohio, for care and treatment, and that

---

[1] Appellant was apparently committed in 1959 pursuant to R.C. 5123.25 which regulated the hearing process upon an affidavit alleging a person to be feeble-minded.

immediate application be made to the Superintendent of said hospital for the admission of Eddie Lewarski." The order was based upon appellant's mother's affidavit and the attestation of two physicians. An "Application for Admission" for appellant to the Columbus State School was filed the same day as the order of commitment and signed by the same judge. These were the only records entered into evidence at the Court of Claims trial regarding the 1959 proceeding.

Because appellant was committed pursuant to indeterminate hospitalization, appellee Columbus Developmental Center correctly discharged appellant in 1971 according to R.C. 5122.21. As in effect in 1971, R.C. 5122.21 granted plenary power to officers of a public hospital to discharge involuntarily hospitalized patients. See 130 Ohio Laws 1197-1198. The hospital official was required under R.C. 5122.21 to notify the court which caused the hospitalization of the patient's discharge. R.C. 5122.36, as in effect in 1971, then required the court, on receiving this notice of discharge from the hospital official, to "forthwith enter its order upon its journal restoring said applicant to competency." 130 Ohio Laws 1200. The Cuyahoga County Probate Court complied exactly with R.C. 5122.36 in 1971 by filing the "Order of Discharge and Restoration of Competency" soon after the court received proper notification of appellant's discharge. In 1971, R.C. 5122.36 did not require a competency hearing once a person had been discharged from state institutionalization pursuant to indeterminate

hospitalization; competency was restored automatically. Thus, it appears that the Cuyahoga County Probate Court followed proper statutory procedures in the 1971 legal restoration of appellant's competency.

Appellant was also notified of his discharge from appellee Columbus Developmental Center and of the probate court's order restoring his legal competency. Appellant testified that he received a copy of the discharge from appellee Columbus Developmental Center by mail soon after he was discharged. There is no indication in the record showing whether appellant received a copy of the competency restoration order immediately after it was effective, nor did R.C. 5122.36, in 1971, require a copy to be sent to the restored individual. However, the record shows that the Cuyahoga County Probate Court did send appellant a copy of the competency restoration order in November 1972 and that appellant also received another copy of the discharge from appellee Columbus Developmental Center in 1977.

In addition, appellant asserts that R.C. 5122.36, as it existed in 1971, only applied to the mentally ill and not the feeble-minded or mentally retarded. However, R.C. 5125.25 in 1971 (see 130 Ohio Laws 1206-1207) stated that:

"The procedures set forth in Chapter 5122. of the Revised Code with respect to hospitalization of patients either by judicial admission or otherwise shall also apply to and be followed in cases pertaining to mentally retarded patients insofar as the same may be applicable."[2]

Even though appellant was found

---

[2] Appellant appears to argue that R.C. 5122.36 did not apply to the mentally retarded or feeble-mined in 1971, but that R.C. 5122.38, as it existed in 1971, did apply to the mentally retarded or feeble-minded. This argument is without merit because R.C. 5125.25 stated in 1971 that all of R.C. Chapter 5122. applied to mentally retarded patients, insofar as applicable. We also note that R.C. 5122.25, although in effect at the time of appellant's competency restoration order in 1971, has since been repealed. See 135 Ohio Laws, Part II, 248, 274.

to be legally competent under R.C. 5122.36 and not R.C. 5122.38, appellant asserts that a hearing to restore competency, pursuant to R.C. 5122.38 as in effect in 1971, should have been held with proper notification to the parties listed under that statute. R.C. 5122.38 in 1971 required a hearing "upon written request by any such individual [person hospitalized for incompetency], his guardian, or the head of the hospital to the probate court" for an adjudication of competency. See 130 Ohio Laws 1200. R.C. 5122.38 also stated that "[t]he court, on its own motion, *may* initiate such a hearing." (Emphasis added.) At trial appellant did not enter any evidence of any individual requesting in writing a competency adjudication in 1971, and if no such request was made then it was within the probate court's discretion under R.C. 5122.38 in 1971 to hold a hearing. The record indicates that appellant wrote to the Cuyahoga County Probate Court regarding his competency, but that this was after the probate court's competency restoration order was filed.

Appellant has now lost, because of his inaction until 1984, any due process right that appellant may have possessed to be notified in 1971, before the competency restoration order was actually journalized, that the probate court was going to legally restore his competency. As stated, the record shows that appellant received a copy of the order restoring his competency in November 1972. However, appellant did not assert any failure of due process until he filed the present action in 1984. Thus, any of appellant's due process rights that may have been violated in 1971 have been lost because of appellant's failure to assert these rights within a reasonable time after he received the November 1972 notice of the legal restoration of his competency.

For the foregoing reasons, we agree with the Court of Claims that the 1971 competency restoration order regarding appellant is valid. Therefore, appellant's first assignment of error is overruled.

In appellant's second assignment of error, he asserts that the Court of Claims erred by not applying the discovery rule to toll the running of the two-year statute of limitations. Appellant argues that the cause of action did not accrue until Dr. Michael Leach told appellant in 1982 that appellees had been negligent in their testing and diagnosis of appellant. However, the evidence admitted at trial indicates that appellant knew of appellees' alleged negligent acts many years before Dr. Leach told appellant that appellees had been negligent in their testing and diagnosis.

Appellant's earlier knowledge that he might have a cause of action against the state is shown by the evidence admitted during trial, the most important of which is appellant's letter to the Cuyahoga County Probate Court on November 24, 1972. This letter stated:

"Because I asked you about a case review is because I think I was adjudged Feebleminded on hear say [*sic*] evidence, put down in black & white, or a unfair hearing.

"I was tested on 11-5-70 at Ohio State University Hospitals Upham Hall by Dr. George Greaves Phd. the test that was used was the wais Full Scale IQ. IQ-98 = 37% ile.

"Why is there such a big change in my IQ scale score difference? The IQ was 63 at the time of the hearing on Aug. 31, 1959."

This letter clearly indicates that in November 1972, appellant believed that he had been incorrectly diagnosed and unfairly adjudicated feebleminded.

Social service reports in 1970 and 1971 regarding appellant, which were submitted by appellant at trial, also indicate that appellant felt that appellees

had improperly diagnosed and treated appellant. In August 1970, social worker Kathie Culbertson's social service report on appellant stated, "[t]hreats again were made about the State's injustices to him [appellant]; he continued to speak about how quickly he could take legal action if he wanted to." Her September 17, 1970 report states, "Ed still seems preoccupied with revenge for State damages done to him." Another social worker reported in May 1971 that appellant was again threatening to sue the state, and in a September 1971 report, this social worker stated that "[h]e [appellant] resents the State of Ohio and the Columbus State Institute with a vehemance that has to be experienced in order to believe its intensity."

Additional evidence of appellant's knowledge of a potential cause of action against appellees is shown in appellant's efforts from 1970 to 1971 to obtain a discharge and a competency restoration order. Appellant's attempt to have his probate records expunged in 1973 also indicates that appellant believed in 1973 that he was never feeble-minded. It is also probable that appellant knew of appellees' possible negligence in 1971, when he was discharged and restored to competency, from the indications in the social service reports. Furthermore, because appellant asserts that he was never feeble-minded, he could have understood, even before he was discharged or legally restored to competency, that appellees might have been negligent in diagnosing his mental capacity.

Other jurisdictions' courts have strictly interpreted when the date for a cause of action based on wrongful commitment or wrongful diagnosis of mental incompetency accrues, and have strictly applied their jurisdictions' provisions for the tolling of a statute of limitations because of incompetency.

In *Sacchi* v. *Blodig* (1983), 215 Neb. 817, 314 N.W. 2d 326, the Nebraska Supreme Court held that the statute of limitations on a released mental patient's cause of action for wrongful diagnosis of mental incapacity began to run when the legal finding of mental disability was removed. The United States Court of Appeals for the Fifth Circuit, applying Florida law in *White* v. *Padgett* (C.A.5, 1973), 475 F. 2d 79, held that a court finding a mental incompetency only creates a rebuttable presumption of incompetency necessary to toll the running of a statute of limitations.

Some states' courts have held that tolling the running of a statute of limitations requires a factual finding of mental incompetency, despite the existence of a legal finding of the plaintiff's incompetency. *Woodruff* v. *Shores* (Mo. 1945), 190 S.W. 2d 994 (holding that a statute permitting an action to be brought within two years after a mental disability is removed did not inlcude a sane person wrongfully committed); *Hoffman* v. *Keller* (D. Ore. 1961), 193 F. Supp. 733 (holding that a tolling provision for the running of the statute of limitations because of insanity was not applicable where the plaintiff contended that he was at all times competent).

The United States Court of Claims in *Goewey* v. *United States* (1979), 612 F. 2d 539, found that a military mental patient's filing of an application to have his military records changed to show disability retirement rather than honorable discharge indicated that the mental patient understood his situation, and also showed that he was not so mentally incompetent that the running of a statute of limitations should be tolled.

Similarly, this court finds that appellant's attempts to secure a discharge and judicial restoration of competency, together with his correspondence to the Cuyahoga County Probate Court and comments made to social workers demonstrate, as the Court of

Claims held, that appellant comprehended his situation and understood that he had a potential cause of action against appellees substantially more than two years before appellant filed his action in 1984.

We also agree with the Court of Claims that the discovery rule for the accrual of a cause of action in R.C. 2305.10 does not apply to the case at bar because that provision of R.C. 2305.10 was specifically enacted to determine the accrual of a cause of action based on injury caused from exposure to asbestos. This court also finds no need to apply any discovery rule to the present case because we agree with the Court of Claims that appellant actually knew substantially before 1982 of appellees' potentially negligent actions. If the discovery rule were to be applied, however, we would find at the very minimum that appellant should have known substantially before 1982 that he had a possible cause of action against appellees.

For the foregoing reasons, appellant's second assignment of error is also overruled and the judgment of the Court of Claims is affirmed.

*Judgment affirmed.*

REILLY and YOUNG, JJ., concur.